CHARLES H. BAILEY ET AL., Appellants, *v.* W. H. CULVER ET AL., Respondents.

May 9, 1882.

1. There can be no dedication of streets and alleys to private use.

2. Neither the commissioners nor the heirs in partition can divest of its public character an alley dedicated to public use.

3. A dedication to public use by acquiescence of the owner is shown by proof that the owner marked out the alley by brick walls, and leased the lots on each side thereof, ceased to return it for taxation for years, and until

his death left it open to public use, and did no act inconsistent with an intention to dedicate it.

4. The owner of land abutting on an alley has a right in the easement beyond his line, only as one of the public, and cannot object to the vacation of the alley two hundred feet from his lot, provided he still has proper egress from his lot.

5. That the municipality deflects the alley at a point two hundred feet distant from the plaintiff's lot furnishes no ground for damages, or for enjoining another from building across the former exit of the alley which has ceased to be a public highway.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Affirmed.*

JOHN K. TIFFANY and KLEIN & FISSE, for the appellants : Under the circumstances and the law applicable thereto, the plaintiffs are entitled to an easement of a right of way over the strip of ground which the defendants have appropriated to their own use.— *Wiggins* v. *McCleary*, 49 N. Y. 346 ; *Smyles* v. *Hastings*, 24 Barb. 44 (*s. c.* in court of appeals, 22 N. Y. 217) ; *Bissell* v. *Railroad Co.*, 23 N. Y. 61 ; *Fisher* v. *Beard*, 32 Iowa, 346, 355 ; *Bump* v. *Sanner*, 37 Md. 621. This easement so created, is a private right in each lot-owner in the block to use and pass over the strip of ground from end to end, " the last inch as well as the first inch " thereof, without interruption, obstruction, or interference on the part of any one. — *Child* v. *Chappell*, 5 Seld. 246 ; *Carlin* v. *Paul*, 11 Mo. 32, 33 ; *Clark* v. *Parker*, 106 Mass. 554. And one lot-owner will not be permitted to obstruct or debar another lot-owner against his consent, in the free and full use thereof. — *Hall* v. *McCaughey*, 51 Pa. St. 43. But even if the public also has acquired an easement in and to the alley by dedication or any subsequent use, that does not impair or take away the private right of an easement appurtenant to his lot in each lot-owner in the block which was created by the dedication itself. — *Haynes* v. *Thomas*, 7 Ind. 38 ; Kerr on Inj. (2d ed.) *262 ; *Street Railway Co.* v. *Cumminsville*, 14 Ohio St. 523 ; *Lutterloh* v. *Mayor*, 15 Fla. 306 ; *Craw-*

*ford* v. *Delaware*, 7 Ohio St. 459–469 ; *Leffler* v. *Burlington*, 18 Iowa, 361. The fact that the Culvers have opened an alley-way deflecting from the main alley into St. Charles Street is not a defence, nor an answer to the plaintiff's action. — *Weathered* v. *Bray*, 7 Ind. 706 (affirmed in 25 Ind. 352–359) ; *Krehl* v. *Burrell*, L. R. 7 Ch. Div. 551, 552 ; *Bannon* v. *Augier*, 2 Allen, 128. Whenever rights, such as the plaintiffs here have shown themselves to be entitled to, have been invaded in the manner in which the defendants have interfered with them as shown in the record, equity takes cognizance of the wrong and grants full and complete relief. — *Krehl* v. *Burrell*, L. R. 7 Ch. Div. 551 (affirmed in L. R. 11 Ch. Div. 146) ; *Gaskin* v. *Balls*, L. R. 13 Ch. Div. 324 ; 2 Story's Eq. Jur. (10th ed.), sect. 926 ; *Tallmadge* v. *East River Bank*, 26 N. Y. 105 (*s. c.* in court below, 2 Duer, 614) ; *Pettibone* v. *Hamilton*, 40 Wis. 402, 416 ; *Attorney-General* v. *Goderich*, 5 Grant (Upper Can.), 401 ; *The Commonwealth* v. *Rush*, 14 Pa. St. 186. An injunction will be granted to prevent the erection of a building under such circumstances.— *Rutherford* v. *Taylor*, 38 Mo. 315 ; *Pettibone* v. *Hamilton*, 40 Wis. 402, 416 ; *Lutterloh* v. *Mayor*, 15 Fla. 306 ; *Krehl* v. *Burrell*, L. R. 7 Ch. Div. 551 (*s. c.* affirmed, L. R. 11 Ch. Div. 146). And if, notwithstanding the commencement of the suit, the defendant has completed the building before the suit has been brought to hearing, the injunction will be mandatory to remove the building which invades or destroys the easement. — *Krehl* v. *Burrell*, L. R. 7 Ch. Div. 551 (*s. c.* affirmed, L. R. 11 Ch. Div. 146) ; *Gaskin* v. *Balls*, L. R. 13 Ch. Div. 324, 327 ; Kerr on Inj. (2d ed.) *50 ; *Clark* v. *Martin*, 49 Pa. St. 298.

MARTIN & LACKLAND, for the respondents : Dedication to public use is established by proof of acts of the owner which disclose his interest to devote the land to public use. — *Hannibal* v. *Draper*, 15 Mo. 634 ; 27 Mo. 211 ; *Carlin* v. *Paul*, 11 Mo. 32 ; *Price* v. *Plainfield*, 40 N. J.

608 ; *Gamble* v. *St. Louis*, 12 Mo. 617 ; *Skrainka* v. *Allen*, 2 Mo. App. 337. The deflection or vacation of an alley may be made or accomplished where another way is left open. — *Carter* v. *New York*, 42 N. Y. 399 ; *Killinger* v. *Railroad Co.*, 50 N. Y. 206 ; *Fearing* v. *Irwin*, 55 N. Y. 468. To maintain a mandatory injunction such as prayed for here, there must be a palpable violation of right. There must be no doubt about it. — *King* v. *McClurg*, 38 Penn. 76. There must be a substantial injury — a serious injury, not a trivial one.— *Fort* v. *Groves*, 29 Md. 188 ; *Green* v. *Oaks*, 17 Ill. 249.

Lewis, P. J., delivered the opinion of the court.

Peter Lindell, who died in 1861, acquired by purchase, in May, 1825, what is now known as block No. 164, in the city of St. Louis, bounded on the north by Washington Avenue, on the south by St. Charles, on the east by Seventh, and on the west by Eighth Street. In 1862, there was a voluntary partition among his heirs of this property, together with other large bodies of real estate in the city and its suburbs. Three commissioners were appointed by agreement, who made an elaborate report, with plats of the blocks, lots, streets, and alleys, and an allotment of their several shares to the ten heirs. This report was duly recorded, and accepted as final. On the plat of block 164 there was represented an alley twelve feet wide running straight through the middle of the block from Seventh to Eighth Streets, or from east to west. The report of the commissioners contained the following language : —

"And the said Sweringen, Dickson, and Clark examined and approved of the said surveys, maps, and plats of said Cozens, and of all the streets, lanes, and alleys laid down and described on said maps and plats ; and each and all of said streets, lanes, and alleys are necessary to be established and dedicated, and are hereby established and dedicated, for

the use of each and all of said heirs-at-law of Peter Lindell, deceased, as the same are laid down and marked on the said maps and plats and surveys of William H. Cozens, Esquire, the surveyor, and made a part of this report."

The entire block No. 164, having frontages of two hundred and seventy feet each on Washington Avenue and St. Charles Street, was divided into twenty-three lots, of which ten had fronts of twenty-seven feet each, on Washington Avenue, and thirteen had fractional equal fronts of about twenty and two-thirds feet each on St. Charles Street. All the lots were bounded in the rear by the alley twelve feet wide. In October, 1879, the plaintiffs, holding under the partition above described, were owners of the three lots at the extreme southeast corner of the block, fronting about sixty-three feet on St. Charles, with a side line on Seventh Street. The defendants, holding under the same title, were owners of the entire west end of the block, having about one hundred and eight feet front on Washington Avenue, and about sixty-three feet on St. Charles Street. Desiring to erect on their property a large building for mercantile purposes, to cost $150,000, which should extend clear through from Washington Avenue to St. Charles Street, the defendants endeavored to obtain the consent of other property-owners in the block to a closing of the alley at its west end, and the substitution of a deflected exit into St. Charles Street, over part of the defendants' ground. Other property-owners consented, but the plaintiffs refused. The defendants then procured the passage of an ordinance by the municipal assembly of the city, whereby the west end of the alley, to the extent of eighty-six feet and nine inches in the north line, and seventy-four feet three inches in the south line, measuring from Eighth Street, was "vacated and abolished." Among other stipulations in the ordinance, it was provided that the adjacent owners should dedicate, grade, and pave an alley, not less than twelve feet wide, commencing on St. Charles Street and

running northwardly and eastwardly, to intersect with the alley not vacated, and further so described as to occupy ground belonging to the defendants.  Provision was made also for an indemnifying bond in favor of the city, to be given by the defendants, against suits for damages, etc. The plaintiffs opposed the passage of this ordinance, and through all the proceedings protested and remonstrated against the closing of any part of the alley, as an unlawful and unjust invasion of their rights.  The defendants erected their building in the manner proposed, and conformed to the provisions of the ordinance in opening and finishing the deflected alley.  The plaintiffs then instituted this suit, praying that the defendants be compelled to remove their building, and restore the alley to its original condition, and that they be restrained by perpetual injunction from making or maintaining any further obstructions, etc.  Upon final hearing the plaintiff's bill was dismissed.

It is contended by the plaintiffs, that there was vested in them, as a property right, an easement or right of way through the entire alley, as it existed before the obstruction, from end to end ; that the city of St. Louis never acquired any property therein, or any control over the same, by which it could divest them of their right aforesaid, and that the passage of the ordinance and the obstruction complained of, amount to a confiscation of their property and an unauthorized seizure of their rights.  All this is unquestionably true if, as the plaintiffs insist, the alley was never dedicated to the public use, but was, from first to last, a mere private easement for the exclusive use and enjoyment of the abutting lot-owners.  But if the plaintiffs never acquired any right in the obstructed part of the alley, other than such as they might assert as members of the general public, then it is equally certain that they are concluded by the action of the city authorities, in the exercise of an undoubted charter power.

The plaintiffs rely, for their claim, chiefly on the words

used in the report of the commissioners in partition, as follows: "And each and all of said streets, lanes, and alleys are necessary to be established and dedicated, and are hereby established and dedicated for the use of each and all of said heirs-at-law of Peter Lindell, deceased." If the commissioners really mean by this to set apart, as the property of all the heirs, and for their exclusive and proprietary enjoyment, all the " streets, lanes, and alleys, as laid down and marked on the said maps and plats," then their words are very inaptly chosen. For, according to the best authorities, there can be no such thing as a dedication to private uses. Washb. on Ease. (3rd ed.) 181. If, however, they mean only that, for the use and best interests of all the heirs, it is necessary to dedicate the streets, lanes, and alleys to the public use, this will, at least, admit of a rational interpretation. Streets, lanes, and alleys are all disposed of together, in one sentence, as composing a single class of subjects. What is meant of any one is meant of all the rest. The proprietary right claimed by the plaintiffs in the alley under consideration, would necessarily include a right in all the proprietors of the block, by agreement, to close the alley against the public. The maps of the property divided include about twenty streets and twenty-two alleys. Do the commissioners mean to say that all these streets and alleys (including Lindell Avenue, which was then first laid out by the commissioners, and whose *status* was thus created and fixed forever) are to be held by the Lindell heirs in exclusive property, with rights of closure, and perpetually beyond the control of municipal authority and the public interests which it represents? If they do not, which we think is the most reasonable supposition, then they do not mean so much as to any of them. If they intend that, so far as they have any authority to speak in the matter, Washington Avenue, St. Charles Street, and eighteen other streets marked on the maps, shall be left and dedicated to the public use, with all the incidents of

control and regulation by the city government, under the terms of its charter, then they intend no less as to the alley concerned in this controversy.

Again : Of all the twenty-two alleys marked on the commissioner's maps, one only, in block 228, is designated " private alley." This would seem to indicate that the commissioners had in view the distinction between public and private alleys ; and that the only one not intended to be a public alley was that in block 228.

But, if any doubt could remain as to what the commissioners intended, there can be none about the *status* of the alley in question when they undertook the partition. If it was then already a public alley, by effectual dedication and user, it was not in the power of the commissioners, or of the heirs in partition, either at the time or afterwards, to divest it of that character, or to make it only a proprietary right of way.

It appears from the evidence that, as early as the year 1840, Peter Lindell established the alley in block 164, by leasing lots on both its fronts, and bounding them on the alley, twelve feet wide, running through the middle. A few years afterwards, he definitely marked it at certain points, by a brick wall on one side and some fencing on the other. From the time when improvements were made defining the alley, Mr. Lindell ceased to return the land occupied by it for assessment or taxation. He did some paving, and frequently made repairs in the alley, but the city sometimes gave a notice to repair, and, if the work was not done by the owner, it would be done by the city for him. This was the course pursued at the time as to both public and private alleys. During all the lifetime of Mr. Lindell, after the making of the alley, it remained open as a passway to all who chose to use it, and no act is shown to have been done by the owner indicating that he had any purpose concerning it other than an unreserved surrender to the public use.

It would seem difficult to make out a stronger case of dedication to the public use, by acquiesence of the owner. Such a dedication must be gathered from the intention of the owner. The mere leaving open of a strip of ground on one's land, without any reference to the public convenience, or for the mere private purposes of the owner himself, or of other specified persons, will not create a dedication. But here the strip was left open with a manifest reference to the public convenience. In his leases, the owner called it an " alley ;" and that word, when not qualified by the term *private*, is conventionally understood, in its relation to towns or cities, to mean a narrow street in common use. By ceasing to pay taxes upon it, and to return it for assessment, the owner of the fee disclaimed all present dominion over the passage-way thus surrendered to the general public. The way was, in fact, used for years by any and all persons who would, without a word or act of interference or hindrance on the part of Mr. Lindell. In no deed or instrument executed by him, and not even in any oral declaration of his, is it shown that he made, or ever intended to make, any reservation of a proprietary right of way in himself, or in any other person.

The commissioners in partition did not pretend to lay out or establish the alley, but reported it as already existing by the acts of the deceased proprietor. The heirs among whom the block was divided repeatedly recognized and acquiesced in the city's control over the way, as a public alley, by paying special tax-bills for its improvement, and by omitting it, in all its parts and extent, from their lists of taxable property returned to the assessor. We think the evidence conclusively proves that the alley under consideration was, at and before the erection of the defendant's building across its western end, a public alley, and, as such, subject to such control and disposition by the city government as the charter authorizes in the cases of all other public streets and alleys in St. Louis.

The owner of a lot abutting on a public street or alley has a vested right in the easement, coextensive with his boundary line, as a means of egress into the outer world, from any part of his lot contiguous therewith. This right is as fully protected against invasion by legislative or municipal agencies, as the right to his house or his farm. But, beyond the limits of contiguity with his lot, his rights in the easement are only those of a member of the public at large. If he could claim more than these at a longitudinal distance of fifty feet from his lot, he could claim the same at the distance of a mile, or of ten miles. The plaintiffs in this case have the same rights on St. Charles Street that they have on the alley. If they are entitled as individuals, to object to a vacating of the alley by municipal authority, at a distance of two hundred feet from their property, — other egress being still provided for them, — they would be equally entitled to interfere against any undertaking, by the same authority, to alter the direction of St. Charles Street, at a point five miles away. Their rights in the highway are simply those of egress and approach. It is true that these rights may be unlawfully prejudiced by an obstruction at a distance from the plaintiff's property, if the effect be to deprive them of communication with the outer world, or to exclude them from the general system of public highways. But that is not this case. The substitution of a deflected alley for a straight one, does no more than to change the direction of their exterior communications, and this being at a point beyond the confines of their property, is as harmless to their absolute rights, as if it were in any other part of the city.

The defendants, owning the property on both sides of the alley, at the point of closure and substitution, were the only persons who could effectually object to the action taken by the city authorities. That they insisted upon and procured that action, is only an argument in favor of its validity. We know of no authority for setting aside the

solemn and authorized acts of a municipal body, because they were chiefly induced or brought about by private solicitation. There is here no attempt to show that the procurement or the passage of the ordinance was tainted with any fraud. The power given by the city charter was ample. Section 26 of the Revised Statutes (p. 1585) provides that "the mayor and assembly shall have power within the city, by ordinance, * * * to establish, open, vacate, alter, widen, extend, pave, or otherwise improve and sprinkle all streets, avenues, sidewalks, alleys, wharves, and public grounds and squares," etc.

We are of opinion that the circuit court was right in dismissing the plaintiff's bill, and the judgment is affirmed. All the judges concur.