E. HANGER, Appellant, v. THE CITY OF DES MOINES, IOWA, *et al.*

**Dedication:** STREETS. Former deeds, conveying certain land, a portion of which is in controversy, and claimed by a city to have been dedicated for a street, contained the following provision: "Two rods on north and two rods on the west are to be given off for streets where owners of opposite property shall give a like quantity" The owner of the land opposite dedicated a strip 25 feet, instead of two rods, wide. The evidence showed that 25 feet of the two rods dedicated by the deeds, together with the 25 feet dedicated by the owner of the opposite property, had been generally traveled by the public with the acquiescence of the owner for more than 10 years *Held,* that the 25 feet of the two rods had been dedicated as a highway by the owner and accepted by the public.

ESTOPPEL BY TAXING. Where the 25-foot strip of land in controversy was noted on the auditor's plat as several separate lots, and was in the actual possession of the public, and was used as such during the time the city levied and collected taxes on it, the levy and collection of taxes for 10 years does not estop the city from claiming it as a street.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

MONDAY, OCTOBER 23, 1899.

BETWEEN Ninth and Tenth streets are lots 11 and 12, abutting what is now North street, running east and west. One Young was owner of lot 12 and the west thirty-five and one-half feet of lot 11, and in conveying inserted this provision in the deed: "Two rods on north and two rods on the west are to be given off for streets when the owners of opposite property shall give a like quantity." In 1872 the county auditor prepared and filed a plat, designating the 25 feet at the north end of lot 12, as "Lot 79," and that at the north end of lot 11 as "Lot 80." This action was begun September 17, 1894, to enjoin the city and its officers from opening or using as a street the strip of land known as "Lot 79" and the west thirty-five and one-half feet of lot 80, and from issuing curbing certificates for improvements to be made thereon, and also to quiet the plaintiff's title therein. The defendant answered that the city of Des Moines was entitled to the land in controversy, both by prescription and by dedication. The plaintiff pleaded by way of estoppel that the city for more than ten years, had levied taxes on this strip of land, and received same from the plaintiff and her grantors. Decree was entered dismissing the plaintiff's petition, and she appeals.—*Affirmed.*

*Phillips, Ryan & Ryan* for appellant.

*J. E. Mershon* and *L. W. Bannister* for appellee.

' LADD, J.—The evidence, though somewhat conflicting, sustains the finding that the strip of land twenty-five feet in width, forming the south half of what is known as "North Street," was dedicated as a highway by the owner, and accepted by the public. The intention to dedicate existed as early as 1858, when Young inserted this clause in his deed to White: "Two rods on the north and two rods on the west are to be given off for streets where the owners of opposite property shall give a like quantity." It was also included in White's deed to Jones in 1866, and in that

of Jones to Edge in 1869. The owner of the land opposite, however, in 1883, dedicated a strip twenty-five feet, instead of two rods, wide. We must presume the plaintiff to have had knowledge of this clause in the deeds forming the chain of her title, and, though the conditions imposed were not strictly complied with, the evidence tends to establish the continual use of North street by the public generally for about twenty years. Travel on other streets may have been more extensive, but it had been as much on this as though laid out according to statute, and "as the circumstances of the surrounding population and their business required." *Baldwin v. Herbst*, 54 Iowa, 171. Indeed, it is not seriously questioned that a portion of it had been so used. The claim of the plaintiff is that travel went to the north of a knoll at the intersection of Ninth and North streets, and then kept on the ground opposite. Several witnesses so testified. On the other hand, Hunt, who had lived in the neighborhood many years, said: "North street has been used as a highway from Ninth to Tenth street for the past twenty years, the same as any highway was used. The width now improved is fifty feet. It had been used for all that time practically the same width as it is now, more or less since 1872. It was the main road running east and west. It was used so the grass was gone off it completely most of the time." This testimony was confirmed by that of Field and Sherman. Besides, a row of trees has been growing along the line south of the strip for many years, and, soon after the dedication of that opposite, a stable and fence situated in it was moved down on the lot proper. True, the tiling by which the low ground at the intersection of North and Tenth streets was drained was put in by Hunt, and the two-plank sidewalk along the fence on the north side of the street was laid by people living in that vicinity for private convenience. But the street was improved by the city by filling in dirt at the intersection of Tenth street with North street, and to the

east, and also by grading down the knoll at the intersection
with Ninth street, and this indicated its acceptance. B. O.
Hanger, who acted as agent of the owner, his mother, testi-
fied that he had never consented nor acquiesced in such use
of the land in controversy. Neither he nor the owner ever
interfered in any way until the city was about to put in curb-
ing. As both lived in the city, it may well be assumed
that they had such knowledge of the use and improvement
of the street as a reasonably prudent and observing person,
having care for his property, would ordinarily acquire. *Dun-
combe v. Powers,* 75 Iowa, 188. The owner has not denied
knowing of the use, and the circumstances are such as to
impart notice. We are satisfied that since 1883, at least,
when the strip opposite was dedicated for more than ten
years, the land in controversy has been generally traveled
as a highway by the public, with the acquiescence of the
owner. It has often been held that a dedication will be
presumed under such circumstances. *State v. Birmingham,*
74 Iowa, 408; *Onstott v. Murray,* 22 Iowa, 469; *Ely v.
Parsons,* 55 Conn., 83 (10 Alt. Rep. 499); *Town of Marion
v. Skillman,* 127 Ind. Sup., 130 (26 N. E. Rep. 676); *Man-
derschid v. City of Dubuque,* 29 Iowa, 73; *State v. Trask,*
27 Am. Dec. 554; 9 Am. & Eng. Enc. Law, 66. Something
is claimed for section 2031 of the Code of 1873, but that
relates to titles by prescription, and not to those by dedica-
tion. *Duncombe v. Powers,* 75 Iowa, 189; *Gray v. Haas,*
98 Iowa, 505. As to distinctions, see *State v. Mitchell,* 58
Iowa, 567; *State v. Kansas City, St. J. & C. B. R. Co.,*
45 Iowa, 142.

II. The levy and collection of taxes on this strip of
land for ten years did not estop the city from claiming it
as a street. During that time it had been in the actual
possession of the street, and using it as such. The plain-
tiff has not been misled to her prejudice. The case
is radically different from *Simplot v. City of
Dubuque,* 49 Iowa, 630, and *Smith v. City of Osage,*

80 Iowa, 84, relied upon by appellant. It is ruled by *Getchell v. Benedict,* 57 Iowa, 121. There the street appeared on the record as a portion of the abutting lots, while here it was noted on the auditor's plat as several separate lots. In the one case, as in the other, the use by the public was apparent. In that, payment of the taxes was exacted because not separated from that levied on the abutting lots; here payment was purely voluntary, and designed to protect no interest of the plaintiff. We do not think the decree, as entered, subject to the misconstruction claimed, and it is AFFIRMED.