113 685
134 440

113 685
136 381

N. P. DODGE AND S. C. DODGE v. E. E. HART, Appellant.

Public Alley: ESTOPPEL TO CLAIM. The fact that an injunction suit to restrain a prior grantor of defendant from extending his building back over an alleged alley was compromised by the grantor agreeing to leave a part of the strip unobstructed as a private way for the parties to the agreement, did not estop such parties from claiming that the strip in controversy was alley nor anyone else from asserting that the whole strip or driveway was a public alley.

DEDICATION OF ALLEY: Evidence. While the fact that, if a strip of land back of defendant's lot was not regarded as an alley, the alley back of the remaining buildings in the block would be cul-de-sac, will not alone create a presumption of dedication, it is held, here, to be, in connection with other evidence, a strong circumstance to prove dedication.

Estoppel to deny dedication. Where the public, for thirty years, with knowledge of defendant, openly and continuously used a strip back of his building as an alley, and defendant, on notice from the city cleaned the alleyway, and allowed the city to pay for paving the street opposite its intersection, he was estopped from claiming that he had no intention of dedicating the strip as a public alley.

PRESCRIPTION AND DEDICATION: Notice of adverse claim. Code, section 3004, which requires express notice of adverse claim, independent of use, to establish an easement by adverse user does not relate to titles by dedication.

Appeal from Pottawattamie District Court.—N. W. MACY, Judge.

. MONDAY, OCTOBER 22, 1900.

ACTION to enjoin excavating in a certain strip of land alleged to be an alley. Decree as prayed, from which defendant appeals.—Affirmed.

Harl & McCabe for appellant.

Caroline L. Dodge and Stone & Tinley for appellees.

LADD, J.—Block No. 8, in Bayliss' addition to Council
Bluffs lies between Main street on the east and Pearl street
on the west, 102 feet apart.  The lots are 50 feet wide, and
abut on both streets.  They are numbered from Broadway,
on the north, and the block is about 300 feet long.  In 1855
the owners of lots 1 and 2 began the construction of what
was known as the "Empire Block," completing it the follow-
ing year.  At that time the west 26 feet of lots 1 and 2 be-
longed to Bayliss; the east 26 feet, to Toole & Jackson; the
25 feet, adjoining the latter, to Toole & Doughty; and the
remaining 25 feet, to R. P. Snow; and the building was di-
vided accordingly.  It fronted on Broadway, and extended
back 80 feet, leaving a strip of 20 feet between it and lot
3, of which cellar entrances occupied from 5 to 8 feet.  The
principal business of the proprietors of these stores was out-
fitting emigrants and others for the plains beyond the Mis-
souri river, and is thus described by one of the witnesses:
"Got their goods in by boats.  Nearly all the merchants in
Empire Block had their goods delivered at the back door
in wagons, and a considerable share of the loading for the
plains was done from the back doors and cellars in this alley.
Very large share of the use of that space was by these mer-
chants.  When they were doing a heavy business, it would be
obstructed,—pretty nearly impossible to drive through.
Their business required that it be conducted in this way.
That continued down till the Empire Block was burned."
There was a small dwelling on the west half of the north 40
feet of lot 3, which was replaced by a large warehouse in
1861.  On the east half was a one-story warehouse used in
connection with the east store.  It should be added that
these warehouses had side doors opening in this vacant
space.  All the buildings were destroyed by the fire of 1867,
and, as the Union Pacific Railroad was completed in 1868,
the old way of doing business was never resumed.
Shortly after the fire, Pusey, who had acquired the
west 26 feet, began excavating for a building to ex-

tend back to lot 3, when he was temporarily enjoined at the suit of Amy and the Brewsters, who owned the next 50 feet, on the ground that a driveway had been dedicated along the south side of lot 2 as a public alley. This was disposed of by written agreement of the parties, under the terms of which a strip 12 feet wide, immediately north of lot 3, and extending 76 feet from Pearl street, was "set apart as a private way, to remain forever free and unobstructed as an entrance and passage to the rear of the buildings on the portions of said lots owned by the parties to this agreement, for the use and benefit of said owners." Thereupon brick buildings were constructed on the three lots, extending back 88 feet from Broadway. Tootle, the owner of the east 26 feet, was not a party to this arrangement; but his grantees, Officer & Pusey, in 1868, erected thereon a three-story brick building, corresponding in length with the others, though with areaways about the cellar windows extending in the 12-foot strip. The year following N. P. Dodge put a brick building on the east half of the north 40 feet of lot 3, acquired by him in 1867; and a year later another on the west half thereof, which had been owned by his wife, S. C. Dodge, since 1864. Doors and windows open from each of these into this vacant way. Since 1856 there has been a well-defined beaten driveway over this strip of land extending from Pearl to Main street, used largely by the owners of lots abutting thereon and their tenants, but also continuously traveled by the public without objection, save as mentioned, and the attempt of defendant, who acquired the east 26 feet of Officer & Pusey in 1898, to excavate back to lot 3, to enjoin which this action was begun. The plaintiffs had made use of this vacant strip as an alley in connection with their buildings on lot 3 for 30 years, during which time they had frequently cleaned it of rubbish on notice from the city, and they insist that it has become, by dedication, a public alley. On the other hand, the defendant asserts that it was left for private use and convenience, and the travel of the public and use by neighbors has

been merely incidental thereto,—permissive only,—and subservient to the owner's title. Did the facts bear out the defendant's contention unquestionably dedication could not be inferred. See *State v. Tucker,* 36 Iowa, 485; *Irwin v. Dixon,* 50 U. S. 10 (13 L. Ed. 25); *Griffin's Appeal,* 109 Pa. St. 150; *Hall v. McLeod,* 2 Metc. (Ky.), 98 (74 Am. Dec. 400); *Durgin v. City of Lowell,* 85 Mass. 398; *Dexter v. Tree,* 117 Ill. 532 (6 N. E. Rep. 506).

But the evidence fails to establish a state of facts upon which the appellant rests his argument. The real design in leaving the space back of the Empire Block is not disclosed by the record. It may have been because of the convenience of an alley at the rear of the building, or for the reason that storerooms 80 feet long were large enough for business purposes, or owing to necessity of such space for the transaction of the peculiar kind of trade then carried on. That it was deemed essential in the early days of the city's life is not questioned. While this might furnish a strong reason for its dedication as an alley, it also quite as satisfactorily explains why it was not otherwise occupied. Up to the time of the fire, in 1867, it was mainly used by the occupants of the Empire Block, though also by any one who wished to drive or walk through. But it must be remembered that the principal purpose of a public alley is to furnish the owners of the abutting lots and those dealing with them convenient access thereto. The main lines of travel are in the streeets. Webster defines an "alley" as "a narrow passage or way in a city, as distinct from a public street." And this was adopted by the supreme court of Minnesota in *Winston v. Johnson,* 42 Minn. 398 (45 N. W. Rep. 958). In *Bailey v. Culver,* 12 Mo. App. 183, it was said, when not private, to mean a "narrow street in common use," and was declared a road in *Sharrett's Road,* 8 Pa. St. 92. In *Bagley v. People,* 43 Mich. 355 (5 N. W. Rep. 415), the court said: "It is designed more especially for the use and accommodation of the owners of property abutting thereon, and to give the public the same unqualified rights therein would defeat the very

end and object intended." See, also, *Horton v. Williams,* 99 Mich. 427 (58 N. W. Rep. 369). Alleys are not intended "to be substitutes for streets, but to serve as means of accommodation to a limited neighborhood for chiefly local convenience." *Beecher v. People,* 38 Mich. 291. Our statute, in authorizing cities and towns "to establish, lay off, open, widen, straighten, narrow, vacate, extend, improve and repair" alleys, distinctly recognizes their public use and necessity. The extent and manner of such use must inevitably depend largely upon location and the character of the business conducted by the occupants of the buildings abutting thereon. The Empire Block was the business center of the city, and the use of this strip, mainly by the proprietors of the stores therein and those dealing with them, was not different than it would have been if platted as a public alley. True, little discrimination was exercised in those days by residents of the city in traveling over vacant land. These circumstances are mentioned, not as establishing a dedication, but as indicating the situation prior to the erection of the defendant's building; for, even though a private way, it might have been thereafter dedicated as an alley. *McAllister v. Pickup,* 84 Iowa, 65.

Officer & Pusey had full knowledge of the use made of the driveway during the ten years prior to the fire, and were informed by the injunction suit that Amy and the Brewsters, at least, claimed it was a public alley. True, their suit was adjusted by an arrangement, brought about by a consideration paid to Pusey, that the 76 feet in length to the west be regarded as a private alley, but this remained open, and has been used by the public ever since. That agreement did not estop Amy and the Brewsters from insisting the land in controversy was an alley, nor any one else from asserting the entire driveway to be such. The mere fact that, if this disputed strip 26 feet long be not regarded an alley, that to the west would be a cul-de-sac, will not alone authorize the inference of a dedi-

cation. *Town of Manchester v. Hoag,* 66 Iowa, 649. But it is a strong circumstance, when considered in connection with Pusey's ownership of the building to the west, concerning which the agreement was made, and the construction of the three-story building precisely the same length of the other three permanent structures fronting on Broadway, and leaving a continuous driveway of uniform width from Main to Pearl street. From that time (1868), for 30 years, notwithstanding ashes, crates, barrels and beer kegs were frequently dumped therein from the buildings abutting thereon, as often happens in laid-out alleys, it has been continuously open and traveled by the public,—more used than any other alleyway in the city. And all this was with Officer & Pusey's knowledge and acquiescence. They did more. They acquiesced in the payment by Dodge of one-half the cost of the return curbing put in by the city at the entrance of the way in 1877, and assessed against his lot, and, in 1884, in the payment by the city for paving the street opposite as an alley intersection. From this they surely had notice that the space back of their building was being treated by the city as a public alley, and they acquiesced rather than pay what would be chargeable to them if their property. During all this time they interposed no hindrance or objection to its use as an alley. See *Bailey v. Culver,* 12 Mo. App. 175. As the effect of the testimony, that they had no purpose of dedicating the vacant space back of their building, is inconsistent with their conduct for 30 years, it ought to be given little weight. Their explanation that the space was left that occupants of the building might have light and air hardly harmonizes with its location as a corner lot. No claim is made by either in his testimony that it was left as a private way for use as such, and the contention that travel therein by the public and by neighbors was merely incidental to its private use is not sustained by the record. Appellant seems to put some reliance on section 3004 of the Code, but that has been held not to relate to titles by dedication. *Gray*

*v. Haas,* 98 Iowa, 505, *Duncombe v. Powers,* 75 Iowa, 189; *Hanger v. City of Des Moines,* 109 Iowa, 480. The evidence sustains the decree finding the space to have been dedicated as an alley, and it is AFFIRMED.

GRANGER, C. J., not sitting.