C. V. Johnson, Appellant, v. The City of Shenandoah, Flora M. Perkins and J. W. Perkins, Appellees.

**Municipal corporations:** ADVERSE POSSESSION: APPLICATION OF DOCTRINE. The doctrine of adverse possession can not be invoked against the state or any of its instrumentalities so as to prevent the exercise of proper governmental functions; although the doctrine will operate in favor of a municipality and give it title or right to the use of ground as a street or alley.

**Same:** ACQUIESCENCE: BOUNDARIES. The boundaries of streets and alleys as between the public and private owners can not be established by acquiescence; but the intervention of a street or alley between the premises of private owners does not affect the question of acquiescence as between them.

**Same:** BOUNDARIES: ESTOPPEL. While a private individual is not
3  entitled to an injunction restraining a municipality from chang-
ing the boundaries of a street or alley on the ground of adverse
possession or acquiescence, still he may rely upon an equitable
estoppel as against the right of the municipality to claim that
the boundary is at a different place than that at which the abut-
ting owners have acknowledged it to be, when the estoppel rests
upon the erection of valuable and permanent improvements with
reference to the lines as claimed by the abutting owners, who
would suffer injury if compelled to remove the same.

*Appeal from Shenandoah Superior Court.*—HON. W. P.
FERGUSON, Judge.

FRIDAY, DECEMBER 15, 1911.

SUIT in equity to enjoin the defendants from changing
the location and boundaries of a certain alley in the de-
fendant city. Plaintiff claims that the alley should remain
where it is, no matter whether according to the plat or
not, because of acquiescence in the location and boundaries
thereof, of adverse possession of that part which is on de-
fendants' lots by the city, and by the plaintiff of that part
of the alley which it is now claimed belongs to the city,
and for the further reason that all the defendants are es-
topped from claiming that the alley should be moved so as
to extend over and upon plaintiff's lot. All these matters
are denied by the defendants, and on these issues the case
was tried to the court resulting in a decree dismissing plain-
tiff's petition. He appeals.—*Reversed* and *remanded.*

*Jennings & Mattox,* for appellant.

*Earl R. Ferguson* and *C. R. Barnes,* for appellees.

DEEMER, J.—There is not much dispute as to the
facts, and the case turns upon the inferences to be drawn
therefrom and the law applicable thereto. Plaintiff and

defendants Perkins are the owners of lots in a block in
what is known as Crippen's addition to the defendant city;
plaintiff owning lot 153, which faces north on University
avenue, and, according to the plat, is fifty feet wide and
one hundred and twenty-five feet long, and defendants own-
ing lots 154, 155 and 156, in the same block, which lots
face the west, are each one hundred and thirty-two feet
in length according to the plat, and forty-one and two-
thirds feet in width.   The plat shows an alley eighteen feet
in width running north and south from University avenue
on the north to an eighteen-foot alley on the south running
east and west through the block one hundred and twenty-five
feet from University avenue.   According to the plat, this
alley runs along the west side of plaintiff's lot, and on the
east side of the rear ends of the lots owned by the defend-
ant Perkins.    There is a corresponding alley running
through the block north of University avenue and just north
of the one in which the lots in controversy are located,
which has long been open to the public.   Crippen's addi-
tion, in which the alley and the lots in question are located,
was laid out by a plat regularly made and filed for record
in April of the year 1873, and all the lots were sold by
Crippen to one Dennison, trustee, in September of the year
1874.   Dennison, trustee, sold and conveyed the lot claimed
by plaintiff to Mattie M. Bailey in April of the year 1883.
Mrs. Bailey sold the lot now owned by plaintiff to one
Spaht in December of the year 1898.   Spaht sold to Wil-
son in April of the year 1900.   Wilson sold to Luidquist
in the year 1902, and in 1904 Luidquist sold to plaintiff.
In 1875 Dennison, trustee, sold the lots owned by defend-
ant Perkins to Hurt; Hurt conveyed to Meyers in October
of the year 1875; Meyers sold to Walrod in 1876; Walrod
conveyed to Meyers in April of the year 1878; and Meyers
sold to Mattie M. Bailey in August of the year 1876.
These lots Nos. 154, 155 and 156, were owned and occu-
pied by Mrs. Bailey until June of the year 1902, when

she sold to one William Orr, and Orr owned them until June 20, 1906, when he sold to defendant Flora M. Perkins, who now owns the same.

The description given in the several deeds was of the lots by number, according to the plat of the addition. It will thus be seen that Mattie M. Bailey owned lot 153 from 1883 to the year 1898, and lots 154, 155 and 156 from 1876 to 1902. In other words, she owned all the lots from 1883 to 1898. Lots 154, 155 and 156 were inclosed by a fence when Mrs. Bailey purchased them, and this fence was on the west side of the alley where plaintiff now claims it should be. When Mrs. Bailey purchased lot 153, it was uninclosed, and she proposed, after obtaining the title, to close the alley; but the owner of lot 152 immediately adjoining lot 153 on the east objected to closing the same, and Mrs. Bailey through her husband, ran a fence along the west side of lot 153 in such a manner as to leave an alley eighteen feet in width between this fence and the one on the east ends of lots 154, 155, and 156. There were also some trees put out along what was apparently the east side of the alley running alongside of and to the west of lot 153. The former owners of lots 154, 155, and 156 built a barn at the southeast corner thereof, facing the east on the alley in question, and this was evidently built with the thought that it was upon the rear or east end of the lots, for a fence was immediately constructed from the northeast corner of this barn directly north to University avenue. When the fence was put in on the west side of lot 153, something like eighteen or twenty feet was left for an alley between that lot and the rear ends of lots 154, 155 and 156. In the year 1897 Mrs. Bailey, through her husband, built a small buggy shed on the southwest corner of lot 153, facing the alley on the west, and this shed ran over to the line now claimed by plaintiff. From the northwest corner of this shed a fence was erected along what is now claimed to be the line of the

alley northward to University avenue. This fence was just west of the trees which had theretofore been set out. Mr. Bailey, the husband of Mattie M. Bailey, the party who erected the fence on the west side of lot 153, testified that it was put in so that he might use the lot for a garden, but he also said that the alleyway between the lots was always left open for from fifteen to eighteen feet, and that it was used as such by parties who had occasion to pass that way. This is also verified by other disinterested witnesses. On cross-examination Bailey testified: "The barn on lot 153 on the southwest corner was built without reference to special lines. I didn't put it there as a boundary line, only to inclose the lot I owned. Didn't know whether it was the boundary line. Didn't recognize it as the boundary line. Don't know whether Mrs. Meyers or a squirrel planted those walnut treees. Don't think I ever represented to anybody that that fence was the boundary line. I think I have told J. W. Perkins it was not the boundary line. The barn on lots 154, 155 and 156 in the southeast corner was there when I purchased the lots and supposed to be on the line, but couldn't say that it was. Yes, sir; lived on these premises practically all the time I lived in Shenandoah."

The house which is now on lot 153 was erected in the year 1898 or 1899 by one Spaht while he owned the property, and he testified:

Built a house on it, and raised up the lot a little bit. Built the same house that is on the lot now, dwelling house; graded the lot some. I took the grading off the southeast corner, and pulled it around on the west and north, as it was low there. I graded it up to that row of trees on the west side there, walnut trees. The west line of that lot 153 as I was informed and believed was there was walnut trees and kind of an old fence like in with the trees on the west side. Pretty hard to tell now. Wire was put on the trees and post and a few slats. The fence extended clear through to the south alley. The lot was bounded on

the north by University avenue. Extended from that to the east and west alley. There was a coalhouse on that lot. We used it for a buggy shed. It was even with the fence on the west side. The fence was located right along those trees as near as I can remember. Don't know just where, but thought it was right along those trees. Just west of this line I have described as the west line of lot 153 was an alley used by the public. The boundary on the west side of this alley when I owned this lot was a board fence probably five feet high extending from the corner of those lots south to the barn. The barn was on the west side of the alley. I think it formed part of the western boundary of that alley as used by the public when I owned the lot. This alley was open to the public and used by the public during the time I owned this lot 153. Mr. Perkins occupied the lots immediately west of the west line of this alley during the time I owned and occupied lot 153. During all this time I owned lot 153 the city never notified me I was encroaching on this west alley. Neither the city nor any one for the city ever gave me such notice. During all the time J. W. Perkins never informed me that the line claimed by me—the walnut trees, buggy barn, and fence—was not the west line of lot 153. I conveyed the lot to B. F. Wilson. . . . I occupied this lot and improved it under the impression and belief that the row of walnut trees and the west side of the buggy shed and the fence from the southwest corner of the buggy shed to the south end of this lot was the west line. . . . I sold it according to the original plat. No; didn't claim to own any more than the original plat. Never measured the lot. I didn't intend to build the house on the western boundary of the lot within a foot or more of the alley; . . . never claimed that I owned more than fifty feet of land from the Varner lot to the alley. . . . It was probably ten feet from the dwelling house I built on this lot to that row of walnut trees. I did not intend to build that dwelling house on the line, and supposed I was enough away from the line to have a little room there.

From the time of the setting out of the trees, the erection of the fences, and the buildings and improvements down until the year 1908 every one supposed that the al-

ley as marked out by these fences and improvements corresponded with the plat; but, when the city in that year came to improve University avenue by putting in a curb and gutter, it found that according to the plat the alley was something like nine and one-half feet over upon lots 154, 155 and 156, and that the same number of feet had been added to lot 153 on the west, and it so turned the curb as to provide for an alley according to the plat, and in August or September of the year 1909 the defendants Perkins set a row of fence posts in the center of the alley, preparatory to removing the fence theretofore existing, and to either fence up one-half the alley or compel the plaintiff to remove his fence, sheds, trees, and other improvements nine and one-half feet to the east. If this removal is compelled, the walls of plaintiff's house will be within a few inches of the east line of the alley, and the eaves thereof will extend from four to six inches over and into the alley. Until the making of the improvement in the street, the city had never claimed that the alley as actually fenced and used was not in the proper place. It never made any objection to any of the improvements made upon any of the lots, but apparently stood by and allowed them to be made without protest. The alley through the block just north of the one in which the alley in controversy is located was laid out on the ground exactly in line with the one in question, and the city recognized it as being on the true line. At one time the city put in sidewalk crossings and drains for both of these alleys on the north and south sides of University avenue, and these crossings were laid according to the lot and alley lines as designated by the fences and improvements, and, as already indicated, nobody made any question as to the true lines until the city made the turns in the curbing for these particular alleys. Even at that time the defendants Perkins made no claims in hostility to the plaintiff. They did nothing until the year 1909, when they started to erect the new fence and set

the posts in the center of the alley as it had theretofore been used. It should be stated in this connection that this suit was brought in May of the year 1909. Now, whilst it must be conceded that the law applicable to such a state of facts as here appears has been in much confusion, recent decisions have set at rest many propositions which have been the subject of debate and of apparently conflicting decisions.

The rule now unquestionably is that the doctrine of adverse possession does not apply to municipalities or other bodies exercising governmental functions, for the reason that the statute of limitations does not run against the state or any of its instrumentalities so as to prevent the exercise of its proper governmental functions. *Quinn v. Baage,* 138 Iowa, 426; *McClenehan v. Jesup,* 144 Iowa, 352; *Burroughs v. Cherokee,* 134 Iowa, 429. Moreover, if the doctrine had application against the city, it would not apply here for the reason that no such claims have been made as would set the statute in motion, and the alley as shown by the recorded plat is not that marked by the fences and other improvements. See *Biglow v. Ritter,* 131 Iowa, 213; *Rae v. Miller,* 99 Iowa, 650; *Markham v. Anamosa,* 122 Iowa, 689; *Railroad Co. v. Hanken,* 140 Iowa, 372; *Palmer v. Osborne,* 115 Iowa, 714; *Grube v. Wells,* 34 Iowa, 148; *Bradley v. Burkhart,* 139 Iowa, 323.

If the city were making a claim of title to that part of the alley which is on defendant's lots either through dedication by the owner and acceptance by the city or by reason of adverse possession, there would under the facts be no reason why it should not succeed; for a municipality may acquire such title as is necessary to a street or alley in either of these methods. In other words, while the statute of limitations will not, as a rule, run against a city, it will operate in its favor, and give it title or the right to use a strip as a street or alley. This is funda-

1. MUNICIPAL CORPORATIONS: adverse possession: application of doctrine.

mental law sustained by the following, among other cases: *Sherman v. Hastings*, 81 Iowa, 372; *Shea v. Ottumwa*, 67 Iowa, 39; *Getchell v. Benedict*, 57 Iowa, 121; *Bell v. Burlington*, 68 Iowa, 296; *Wilson v. Sexon*, 27 Iowa, 15; *Gerberling v. Wunnenberg*, 51 Iowa, 125; *Duncombe v. Powers*, 75 Iowa, 185; *Dodge v. Hart*, 113 Iowa, 685; *Brown v. Peck*, 125 Iowa, 624; *Hanger v. City*, 109 Iowa, 480. In so far as the city is concerned, the alley as marked out by the fences, buildings, trees, and other improvements is the one to which it is entitled, although there may be some question of plaintiff's right to compel it to accept this alley rather than the one marked out on the plat under any of the rules so far announced.

Again, we are now committed to the proposition that the lines and boundaries of highways, streets, and alleys between the public and private owners can not be established by acquiescence for the reason, among others, that no one is authorized to represent the state or its instrumentalities in

**2. SAME: acquiescence: boundaries.**

making any such agreements or to acquiescence in a given line. *Quinn v. Baage*, 138 Iowa, 426; *Weikamp v. Jungers*, 150 Iowa, 292. But in the same connection it has been held that in controversies between private owners regarding their lines and boundaries the intervention of a highway between their premises has no effect upon the doctrine of acquiescence. *Quinn v. Baage, supra; Buch v. Flanders*, 119 Iowa, 164; *Klinkefus v. Vanmeter*, 122 Iowa, 412. In so far then as this controversy is over the boundary lines of plaintiff's and defendants Perkins' property, the doctrine of acquiescence does apply, and under the rule announced in *Miller v. Mills Co.*, 111 Iowa, 654; *Laughlin v. Francis*, 129 Iowa, 62, and other like cases too numerous to be cited, plaintiff would undoubtedly be entitled to a decree enjoining the erection of the fence in the center of the alley.

Although plaintiff can not have an injunction against

the city because of adverse possession or by reason of acquiescence in the lines marked out by the fences, he may under all the decisions rely upon an estoppel on the part of the city to claim that the alley is at any other place than where the parties owning abutting property acknowledged it to be. This doctrine of equitable estoppel is, or may be, based upon the erection of valuable and permanent improvements with refernce to the lines marked out and claimed by abutting owners who would· be greatly injured were they compelled to remove such improvements. See the following cases: *Uptagraff v. Smith,* 106 Iowa, 385; *Incorporated Town of Cambridge v. Cook,* 97 Iowa, 599; *Johnson v. Burlington,* 95 Iowa, 197; *Bell v. Burlington,* 68 Iowa, 296; *Davenport v. Boyd,* 109 Iowa, 248; *Eldora v. Edgington,* 130 Iowa, 151; *Corey v. Ft. Dodge,* 118 Iowa, 742; *Blennerhassett v. Forest City,* 117 Iowa, 680; *Duetzmann v. Kuntze,* 147 Iowa, 158; *Quinn v. Baage,* 138 Iowa, 438. We have held in this connection, however, that the mere setting out or growing of trees or the erection of fences, or the use of a street for agricultural purposes, will not be sufficient upon which to predicate an estoppel, but have always held that the erection of buildings or the making of other permanent improvements will be sufficient basis for an estoppel *in pais. Bradley v. Appanoose Co.,* 106 Iowa, 105; *Burroughs· v. City,* 134 Iowa, 429; *Quinton v. Burton,* 61 Iowa, 471.

Now the evidence in this case shows that permanent improvements were made upon lot 153 with reference to the line marked out by the fence, the row of trees, and the buggy shed upon the lot. Both the house and shed were erected, and the lot was improved with reference to that line. All this was without any objection from either the city or the owner of lots 154, 155 and 156. If the alley is now to be opened with reference to the lines shown by the plat, the eaves of plaintiff's house will extend over and

3. SAME: boundaries: estoppel.

upon the space left for the alley. Plaintiff will be compelled to remove his fence, cut down his trees, and remove his buggy shed, and doubtless do something to support the walls of his house, for they will be within a few inches of the alley. All of this because of a claimed mistake made many years ago in laying out the alley upon the ground. The case differs from many of those relied upon by counsel for appellee, in that the alley, if confirmed where it now is, will be of the full width described in the plat. The city and the public, as well as the individual property owners in the block, will have an alley practically at the place indicated upon the plat, and fully eighteen feet in width. The public suffers nothing save perhaps in the fact that the lines of this alley may not in view of recent developments correspond with those in the alley immediately to the north. But this is an inconsequential matter, for the reason that, as originally laid out upon the ground and used, they did coincide, and, if they do not now, it is due to no fault of the plaintiff. Esthetically it may be desirable to have the streets and alleys in a city uniform in width, course, and direction; but desire for beauty can not be made controlling.

Reduced to its final analysis, the question is really between the adjoining property owners, the city being indifferent as to the result. Defendants, Perkins, are seeking to add something like nine and one-half feet to the rear of their lots, and plaintiff is expected to give up a like amount from the lot inclosed and improved by him. The city in any event has an alley full eighteen feet in width and at approximately the place called for by the plat. Were this simply an attempt on plaintiff's part to claim part of the alley, and there had been no estoppel in the case, a different result might be looked for. As it is, there is little doubt in our minds that the decree should have been in plaintiff's favor, and it is so ordered.

The decree will be reversed and the cause remanded

for one in harmony with this opinion.—*Reversed* and *remanded.*