W. K. McAllister, Appellee, v. Richard Pickup, Appellant.

1. **Highways:** EASEMENT: TITLE BY PRESCRIPTION. Where a road was laid out upon a dividing line between the lands of the plaintiff and the defendant, and used by them and their grantors continuously, openly and notoriously for more than forty years, without the right to such use being disputed, and when the defendant after such period fenced up said road against the protest of the plaintiff, who asserted his right to use said road, *held*, that an easement in said land of the defendant had been acquired by prescription.

2. ———: ———: ———. The provisions of section 2031 of the Code have no application to cases where the title by prescription had become perfected before the enactment of that statute.

3. ———: ———: ———: USE BEGUN UNDER LICENSE. Where the necessary conditions to establish a title by prescription to a private way are shown, it is immaterial that the use of such way was begun under an agreement or license.

*Appeal from Des Moines District Court.—*Hon. C. H. Phelps, Judge.

Wednesday, December 16, 1891.

Action in chancery for the abatement of a nuisance, caused by the obstruction of a roadway, and to enjoin the maintenance of the same. Partial relief was granted the plaintiff. Both parties appeal, the defendant first, and he is, therefore, designated as the appellant.—*Affirmed*.

*Hedge & Blythe*, for appellant.

*J. T. Illick*, for appellee.

Beck, C. J.—I. The petition shows that the plaintiff owns an eighty-acre subdivision of land which adjoins on the east a tract owned by Mrs. Walker. On the south of these tracts, and adjoining thereto, the

defendant owns lands, the quantity of which is not shown, further than that they abut upon the lands of the plaintiff and Mrs. Walker. On the line dividing the defendant's land from the plaintiff's and Mrs. Walker, a roadway twenty feet wide "was established, and recognized and acknowledged by all concerned," for more than forty years. The roadway approaches the plaintiff's lands from the east, and is the only outlet therefrom. The defendant in his answer admits the allegations of the petition as to the location and ownership of the lands abutting upon the roadway. He denies that the road was used by the public, or any part of the public, under claim of right, within the past forty years, or during any period. He alleges that his brother owned the land in 1838, and one Hoffman then owned the lands now the property of Mrs. Walker. These parties agreed upon the boundary line between the lands, and agreed to open a lane along that line, each giving a part of the land, which should be for their own use only and for such others to whom they might grant the privilege of using the road, which was used by the parties and their grantors and representatives until 1888, when the defendant erected a fence along the line agreed upon, just stated.

II. It is shown that the road has been opened and used for more than forty years. The defendant testified: "Have lived on my present premises since 1837. * * * When the government surveyors came along, my brother and Mr. Hoffman set off a lane between their farms, and left it for their convenience, and whenever they saw proper it was their privilege to close it up. * * * My brother and he [Hoffman] built a fence * * * according to the agreement of the parties." It clearly appears from the evidence that Mrs. Walker acquired the land on the north side of the lane from Hoffman as early as 1844 or 1845, and that the defendant and his grantors were

1. Highways: easement: title by prescription.

in possession of the south side prior to the survey of the lands by the government, and the defendant's grantors subsequently entered it, and the defendant now owns it. It is also shown that the roadway was used without objection from the time of the government survey until 1888 or 1889, when the defendant fenced it up. Such use was with the knowledge of the landowners, and the right to use it was never disputed, until that time, and then only by the defendant. Silas Walker testified: "I know where they claim to be a lane along the east and west center line of section 5. Where Pickup put up a wire fence [the fence complained of]; there was a lane there before that wire fence was put there; was fenced on either side. A good part of it was there forty-five years ago. People used it right along. Did not ask leave of anybody on north side. Mrs. Walker lives now on the farm owned by Mr. Hoffman. He built the fence about 1844. He was the owner of the land until this fence was built. Never heard any dispute about its being a public road. I know of no other way to get to McAllister's land." Other witnesses testify to substantially the same facts, and it is shown that no obstruction was put in the road before the fence was built by the defendant.

The defendant's statement as to the agreement between his brother and Hoffman is not corroborated by any other witness or circumstances. Hoffman parted with the land in 1844 or 1845. The evidence does not show when the defendant acquired the title to the land. No one testified that the right of the plaintiff and others to the use of the roadway was ever called in question, nor is there any evidence of any admission on the part of the plaintiff or any other one using the road that he did not claim the right to such use. In fact, as there seems never to have been any dispute as to the right of the plaintiff and others to use the roadway, there was no occasion for any claim or proclamation of such right. But as soon as the defendant

fenced up the road, the plaintiff denied his right to do so. The defendant on this point testifies as follows: "After I made the fence he [plaintiff] came down and wanted to buy a piece. He said I had no right to build a fence. I told him I would not sell him so many rods." The plaintiff testifies: "Never heard anything to the contrary, but that I had a perfect right to the road; thought it cheaper to buy the land than to have a lawsuit." The evidence shows that the plaintiff and his grantors and others for a great many years have used the land under claim of right, and that the first time any objection or obstruction was made to such use the plaintiff denied the defendant's right to obstruct it, and proclaimed his own right to use it. We have the case of the use of a roadway for a time longer than the period of the statute of limitations, which was peaceful, continuous, uninterrupted, open and notorious, and with the knowledge of the defendant and his grantors; and when the plaintiff's rights were disputed, and a right to obstruct the road claimed, he denied such right, and asserted his own right to use the road. This evidence most satisfactorily shows a claim and use of the road adverse to defendant.

What we have said in relation to the evidence is sufficient to show that the adverse possession of the plaintiff and others of the roadway was established without considering the use of the way, or, rather, independent of such use. One or two further thoughts upon this point may prove to be profitable. It will be remembered that of necessity the intention of the parties is a fact that enters largely into the solution of the question of adverse possession. That intention is shown by the acts and declarations of the parties. Now, if there be no occasion for acts or declarations proclaiming the fact that possession of land or the use of an easement is adverse, they would not occur. The plaintiff and others for a long time have used the road in question, which may be regarded as a private

way, and no obstacles or objections were interposed to such use. Year after year, for a time longer than the period of the statute of limitations, has passed, and they have used the road, with no one objecting. When the defendant does object and erects an obstruction, the plaintiff proclaims his right to the use of the private way, and denies the defendant's right to obstruct it. Here is the only instance where the plaintiff's right was denied, and he promptly proclaims his right, and denies the defendant's claim of right to obstruct the road. Surely a landowner who promptly claims a right to an easement when it is obstructed, and denies the right of another to obstruct it, must be regarded as holding the easement adverse to the other who interferes with his enjoyment of it. The plaintiff in this case and his grantors never had occasion or opportunity by act or word to proclaim that they used the private way adversely to the defendant. It would be absurd to say that they must show such acts or words, which they could not have done or said, for there was no occasion therefor.

III. Code, section 2031, is in this language: "In all suits hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession of the same for the period of ten years, or by prescription, the use of the same shall not be admitted as evidence that the party claimed the easement as his right; but the fact of adverse possession shall be proved by evidence distinct from and independent of the use, and that the party against whom the claim is made had express notice thereof, and these provisions shall apply to the public as well as private claims." This statute does not apply to this case, for the right of plaintiff and his grantors had been acquired by prescription before the statute was enacted. Sec. 2036; *Baldwin v. Herbst*, 54 Iowa, 168. The plaintiff has, therefore, the right, under

the doctrine of prescription, to use and enjoy the way in question.

IV. If the use of the road was begun under permission, yet, as it was used. under a claim of right for a term equal to the period of the statute of limitations, which, under the decision of this court, will support a prescription, the road is gained by prescription. Washburn on Easements, 121, 122; *State v. Tucker*, 36 Iowa, 485.

3. ———: ———: ———:
use begun un-
der license.

If it be assumed that the defendant's own testimony establishes an agreement between his brother and Hoffman that either of them should have the right at his option to close the roadway, that is, that the roadway was used under a license or mutual assent of the parties bound by the agreement, it does not follow that the plaintiff's claim, based upon prescription, is defeated. The agreement or license for the use of the roadway was personal to each of the parties. If they, or those claiming under them, failed to terminate the agreement or license, and the plaintiff and others continued the use of the road under adverse claim of right for a time equal to the period of the statute of limitation, a prescription will arise notwithstanding the prior license or agreement; and the same result would follow if such license or agreement were terminated, and the like adverse use were had. In each case the prescription would arise upon the adverse use of the roadway. It follows that, if the use and adverse possession and other conditions necessary to establish prescription be shown, the plaintiff's right to the roadway will be sustained under his claim of prescription, without regard to prior use under license or agreement, or the termination of such license or agreement. As we have shown, all conditions necessary to establish prescription—open, notorious, continued or adverse use by the plaintiff and others for a time longer than the period of limitations since the defend-

ant's brother and Hoffman entered into the alleged agreement as to the lane—are established by the evidence or legal inference therefrom.

V. The court found that the fence complained of was not upon the line between the lands of the parties, but was upon the plaintiff's land, and decided and so decreed that it be removed therefrom. The defendant complained of this part of the decree, and appeals therefrom, claiming that the division line was settled by agreement between his brother and Hoffman, and, therefore, the decree is erroneous. We need not inquire whether the defendant's claim of the settlement by agreement of the division be valid, as we reach the conclusion that the plaintiff holds a right to the road by prescription as it existed when the defendant erected the fence which obstructed it. Wherever the division line is, whether on the congressional line or on the agreed line, the roadway must be restored as it existed before the defendant erected the fence.

The district court by the decree decides that no road in which the plaintiff holds a prescription right exists, and refused to recognize the road and give the plaintiff the relief for which he prayed. The decree will be reversed on the plaintiff's appeal, and the cause will be remanded for a decree in harmony with this opinion, or such a decree will be entered in this court, at the plaintiff's option.

On the plaintiff's appeal the judgment is REVERSED; on the defendant's appeal it is AFFIRMED.