J. E. Scott, Appellee, v. Barney Habinck et al., Appellants.

SPECIFIC PERFORMANCE: Contracts Enforcible—Sufficiency of
1 Evidence. Evidence reviewed, in an action for specific performance of a contract to sell land, and held sufficient to establish the same.

SPECIFIC PERFORMANCE: . Contracts' Enforcible—Inadequate
2 Consideration. Inadequacy of consideration is, in itself, an insufficient ground for refusing specific performance of a contract, unless so gross as to shock the conscience.

CONTRACTS: Performance or Breach—Agent as Purchaser. Where
3 the owner of a farm knew that his agent was one of the purchasers, and did not repudiate, but acquiesced in and consented to the transaction, and accepted the first payment of the purchase money, and after that, rights of other parties intervened, he cannot refuse to perform on the ground of his agent's participation.

**SPECIFIC PERFORMANCE:** Contracts Enforcible—Fraud in Obtaining Wife's Signature. Where the wife's signature to the contract for the sale of land was only necessary in order that her husband might be held to specific performance, and that she might be forced to join if she refused, she having no interest except her dower right, and not furnishing title to land, the fact that her signature was obtained by fraud was no defense by her husband to prevent specific performance.

**APPEAL AND ERROR:** Reservation of Grounds—Questions First Raised on Appeal. Where no question was raised on the trial of the case, and no issue was tendered by the pleadings as to the claim, in an action for specific performance, that the wife had an interest in the land involved, other than her inchoate right of dower, the same may not be raised for the first time in the Supreme Court.

*Appeal from Monona District Court.*—J. W. ANDERSON, Judge.

OCTOBER 2, 1919.

REHEARING DENIED JANUARY 20, 1920.

ACTION in equity for specific performance of a contract for the sale of real estate. There was a decree for plaintiff, and the defendants appeal.—*Affirmed.*

*C. E. Underhill* and *Sims & Kuehnle*, for appellants.

*J. A. Pritchard* and *C. C. Cooper*, for appellee.

PRESTON, J.—Plaintiff's claim is that he and defendants, on March 16, 1917, entered into a written contract for the sale by defendant to plaintiff, acting for himself and C. C. Jacobson, John R. Welch, and W. H. Leathers, of 480 acres of land near Mapleton, in Monona County, Iowa, at the agreed price of $100 per acre; that $4,000 was paid down on the contract; that there was to be a further payment of $12,000 on March 1, 1918, and the balance was to be paid by plaintiff's assuming and agreeing to pay

1. SPECIFIC PERFORMANCE: contracts enforcible: sufficiency of evidence.

a mortgage of $32,000, which was to be placed against the property, and which was to take the place of an existing mortgage. Plaintiff claimed that he had fulfilled the terms of the contract; that he was ready, willing, and able to carry out its terms, but that defendants refused to comply therewith. It was finally determined by the four parties interested in the purchase that the title should be taken in plaintiff's name. Defendants deny entering into the contract, but admit that their names were, in fact, signed thereto; they aver that the contract had been materially changed, since it had been signed by them, in that plaintiff's name did not appear therein as a proposed purchaser, and they did not understand it was to be written therein or signed thereto; that the signatures of the defendants to the contract were procured by fraud and deceit, practiced upon them by Jacobson, who, at that time, was cashier of the bank where defendants for a long time had been customers; that Jacobson was acting as the agent for defendants; that the land was worth $15,000 more than the consideration named in the instrument, and that, under the circumstances, Jacobson should not be permitted to share in the increase in value; and that he secretly connived with plaintiff and others by falsely representing that the proposed purchaser was a resident of Omaha, and a man of means, able to perform his part of the contract; that, had they known that Jacobson or plaintiff or the others were, in fact, to be the purchasers, they would not have signed the contract; that, upon learning that plaintiff's name appeared in the contract as the proposed purchaser thereof, and of the fraud, they repudiated the contract; that the transaction is unconscionable; that its enforcement would operate as a legal fraud upon defendants; and that plaintiff has an adequate remedy at law. For reply, plaintiff says that, if the name of the grantee was different, as alleged by defendants, the defendants were estopped from denying the contract, for that they had accepted the

same after knowledge of who the grantee was, and had per-
mitted the grantee to resell the land, with their knowledge,
and without making objections. The defendant Barney
Habinck is a farmer, and, with his wife and family, resides
on a farm owned by him on the outskirts of Mapleton. The
480 acres in controversy are situated some 4½ miles from
his home farm. Defendant had owned the 480 acres for a
good many years, and lived on it until they moved to the
place nearer town. Defendants and plaintiff have been on
very unfriendly terms for a number of years, and the same
is claimed to be true as to Habinck and Lamp (who bought
the land from plaintiff), but in a lesser degree, it seems.
Habinck claims that plaintiff had had him arrested on dif-
ferent occasions, and it seems that defendant had others in
the neighborhood whom he considered as his enemies. Part
of this grew out of a school controversy. The town
of Mapleton and a considerable portion of the sur-
rounding country had been organized into a consolidated
school district, in which was defendants' 480 acres. De-
fendants were greatly disturbed over the establishment of
this district, and, under the evidence, placed this land in
controversy in the hands of numerous agents, at $100 per
acre. For some time prior to the transaction in question,
Habinck had been negotiating for the sale of these prem
ises with a party from Omaha; but the sale was never con-
summated. Later, Jacobson, who was cashier of the bank
in Mapleton where defendant transacted his business, Welch,
president of the bank, Leathers, and plaintiff, who were all
business men of Mapleton, decided to purchase the premises
in controversy at the price asked by defendant. Jacobson
negotiated the purchase. Defendant says that Jacobson
told him that he had a purchaser from Omaha for the 480
acres, at $100 an acre, and that the Omaha man had means
with which to buy the land, and that Jacobson represented
to defendant that it was an advantageous deal. Jacobson

denies that he claimed to be negotiating for an Omaha man. There is evidence that defendant said he did not care who got the land. The land was defendant's own land, which he had owned for some time, and he doubtless had a very good idea of the value thereof, though he claims he was only a farmer. There is some dispute in the testimony as to the value of the land. We suspect that the real reason for defendant's refusing to carry out his contract was the enmity between him and plaintiff. However this may be, defendant knew he was dealing with plaintiff, and that plaintiff had signed the contract as purchaser before the initial payment of $4,000 was made, which defendant received with such knowledge, and he still retains the money. After the negotiations, Jacobson prepared a contract, with the name of the purchaser or purchasers left in blank, which was delivered to Habinck to take home for his wife's signature, and for Habinck to further consider. Habinck returned the contract to Jacobson, with Mrs. Habinck's signature attached. The purchasers were not ready, just then, to complete the contract, and he told Habinck to keep the contract in his possession until the following Monday, and then, if he was still disposed to sell the land, that they would complete it. On Monday morning, Habinck returned to the bank and delivered the contract, signed in duplicate by himself and wife. Plaintiff's claim is that, at the time the contract was first delivered to Habinck, it had not been decided which of the four parties should take title, or whether it should be all four, but later, it had been decided that the title should be taken in Scott, to hold in trust for the others. Habinck remained in the bank until Scott's name was filled in as the purchaser, and the contract signed by Scott. The contract was then delivered to Habinck, signed by Scott as purchaser, and by Habinck and wife. Habinck admits that, before he received the $4,000, he knew Scott's name appeared as purchaser. Welch testifies that he is not sure that he told Hab-

inck who the purchasers were, and to take the contract home and think it over until Monday. We think it is established that Habinck fully understood this matter. Habinck says he was surprised when he saw Scott's name in the contract, because Scott had been his enemy for 20 years; that, some time after this, he told Jacobson that he was selling to his enemies, instead of to the Omaha man, and that, thereupon, Jacobson told him that he would sell the contract, and thereupon, defendant said to "crack away." Thereafter, the land was sold to other parties, as before stated. But Habinck received and used the money, after he and his wife signed the contract, and at no time had offered to refund it until the trial of the case. Neither did he attempt to cancel the contract or surrender it, during the time it was in his possession. Near the close of the trial, he, by his counsel, in open court, offered to return the contract for cancellation, and to return the money received by him to the plaintiff, or to whosoever might be entitled to it. Defendant claims, as to this $4,000, that he gave a note for $280, which would equal 7 per cent on the $4,000 for a year, and that, if the trade went through, the $280 should go to Jacobson as his commission, and that, if the trade fell through, the $4,000 was to be treated as a loan, and the $280 would be the interest on it; but plaintiff says that, ordinarily, a smaller payment of from $4,000 to $6,000 was paid down in such transactions, and that, if they were not to get possession of the land for nearly a year, it was agreed that the $280 should be lumped as interest on about $3,500, and that it was for interest only, and that it was not to go to Jacobson, but to be divided equally among the four purchasers. We do not regard this as very material, except that it may, perhaps, have a bearing on the question whether Jacobson was agent for defendant. At any rate, defendant kept the money, and used it to pay off a $3,000 note of his own to the bank, before due, and checked out the balance at different times.

He made no objection, at any time, as to the persons who were the purchasers, until the trial. There is evidence that defendant told different ones that he had sold the land to Jacobson and those associated with him; that he was glad of the sale; that, a few days after he had completed the contract, he made application for a loan with Jacobson, as provided in the contract, signed and swore to the application, stating therein that he had sold the land to Scott; that he helped Jacobson to plat the land, showing the fences that belonged to the place. The purchasers of the land resold it to Lamp, who again resold to one Patrick. This is the general situation. It is conceded by counsel for appellant that the record is full of apparent inconsistencies on the part of Mr. Habinck and in his testimony. But they say that these inconsistencies are more apparent than real, etc. Though there is a conflict in the testimony at some points, we are satisfied with the findings of fact by the trial court, where there is a dispute, and this without setting out the testimony.

1. Two or three matters which seem to be of minor importance will be referred to briefly before taking up those which seem to be more seriously relied upon. We have already referred to the equities, and that the controverted points are sustained by the evidence. It is argued by appellants and conceded by appellee that actions for specific performance of contract for the sale of real estate are addressed to the sound, legal discretion of the court, and will be granted or denied as the justice and right of the particular case shall seem to the court. We think that, under the entire record, the equities are with the plaintiff, and that, therefore, the discretion which the trial court did exercise in favor of plaintiff was a proper and legal exercise thereof. In fact, there seems to be no controversy as to the law of the case. We have already briefly referred to the alleged false representations to defendant that the purchase of the

land was being negotiated for an Omaha party. As said, defendant at first said, and his wife said, that they did not know that plaintiff and his associates were the purchasers; but, as said, there was no claim that these parties were not able to perform the contract. Furthermore, they received the same price from these parties for which defendants were willing to sell to an Omaha party, had he concluded the contract. As to the proposition that defendants, some time after the transaction, concluded that they did not wish to sell to the parties, some of whom were thought to be unfriendly to defendants, the testimony of Mr. Habinck as to this is denied.

As to the alleged inadequacy of consideration, we have held that this is not itself a sufficient ground for refusing specific performance, at least unless it is so gross as to shock the conscience. We shall not go into the evidence as to this, but content ourselves with saying that we are satisfied with the finding of the trial court at this point.

2. SPECIFIC PER-
FORMANCE: con-
tracts enfor-
cible: inad-
equate consid-
eration.

There was evidence for plaintiff that defendant stated to others that he got a good price for his land. He had been offering to sell it at the price which he received.

It is contended by appellants that, under the evidence, Jacobson was the agent of Habinck, and as such was disqualified from becoming interested in the purchase without the knowledge and consent of Habinck. It is squarely denied by Jacobson that he was the agent for Habinck, and the trial court seems to have found for plaintiff. But even

3. CONTRACTS:
performance
or breach:
agent as pur-
chaser.

if he was, Habinck did not repudiate the transaction, but, on the contrary, acquiesced therein, consented thereto, and accepted the first payment on the purchase money; and there were intervening rights of other parties.

2. It is next contended that plaintiff was not entitled to a decree of specific performance, because the contract is

not enforcible against Mrs. Habinck, even though the contract is established as against her husband,

**4. SPECIFIC PERFORMANCE: contracts enforcible: fraud in obtaining wife's signature.** since her signature to the contract was obtained by fraud, in that she did not know that Scott was to be the purchaser. We are cited to *Healy v. Hohn,* 157 Iowa 375, 397.

In that case, the trial court found that there was not a completed contract, either because the wife was to sign it, or defendant was to be satisfied with an unsecured note before the contract was to become effective, and there was a conflict in the testimony as to whether these two things were to be done. The court, in that case, considered it a circumstance in favor of defendants, and their contention that such was the agreement, that the parties considered it was necessary that the wife should sign; and the court said that this was not conclusive, because, under our law, it might be enforcible against the husband without the wife's signature. But in the instant case, neither defendant is asking that a portion of the purchase price be withheld and deposited. Aside from this, Mrs. Habinck testified in regard to her husband's bringing the contract to her, and stating to her that the purchaser was an Omaha man; that she said to her husband that they had had so much trouble with their enemies that he had better sell it to the Omaha man; and that, thereupon, she signed the contract. She says further:

"I did sign the contract, and knew on the 19th day, Monday, that Mr. Scott's name had been put in the contract."

And after that, Mr. Habinck used the $4,000, checking it out over a period of several months, and Mrs. Habinck made no objections. There was no representation to Mrs. Habinck by plaintiff or any of his associates in regard to the purchaser's being an Omaha man. Again, in a sense, she was not really a party, so far as her inchoate right of dower is concerned. Her husband was to furnish the title.

Her name to the contract was only necessary in order that her husband might be held to specific performance, and that she might be forced to join, if she refused. She was not furnishing title. She could not maintain an action for damages, nor could she be held for damages if she broke the contract. As said, Mr. Habinck clearly has no standing, and we think that the trial court did not err in finding for plaintiff as to the claim of Mrs. Habinck. Another claim made by defendants is that Mrs. Habinck had an interest in the land in addition to her inchoate right of dower, and that she was, therefore, a necessary party. But this question seems not to have been raised in any way in the trial of the case. No issue of that sort was tendered by the pleadings. Indeed, the matter seems to have been referred to only incidentally during the trial. Habinck testified, among other things, when he was recalled, that he had the record title of this land, and in his name, and Mrs. Habinck testified, on redirect examination:

5. APPEAL AND ERROR: reservation of grounds: questions first raised on appeal.

"I have $3,000 from my home given to me, that was invested in this 480 acres. Just let Mr. Habinck use that in the land. It was never invested while we lived on the place. It did not go into the other place or anything. It was invested in that 480 acres. So I had that much interest in addition to my dower interest, as they call it, in the land."

The evidence heretofore set out as to her conduct has a bearing on this question. But appellees contend, and cite authority in support of their proposition, that a new question may not be raised for the first time in the Supreme Court. We shall not prolong the discussion as to this.

As said, we think the equities are with the plaintiff, and further, that plaintiff's plea of estoppel is well taken.

We reach the conclusion that the decree of the trial court was right, and it is, therefore,—*Affirmed.*

. LADD, C. J., EVANS and SALINGER, JJ., concur.