COHEN BROTHERS IRON & METAL COMPANY, Appellant, v. SHACK-
ELFORD BRICK COMPANY, Appellee.

**VENDOR AND PURCHASER:** Rescission—Representation as to Acre-
age. Casual statements by an officer of the owner of land as to the acreage thereof, made without any purpose of effecting a sale, may not be made the basis of a rescission of a contract made several months later with other officers of the owner, who had no knowledge of such former casual statements.

**HIGHWAYS:** Prescription—Evidence—Sufficiency. A highway by pre-
scription is established by evidence that a public road was duly established across the premises in question, but proved abortive because of indefiniteness of description; that, immediately thereafter, the public commenced to travel over said premises, under a claim of right; that the public authorities have recognized said traveled way and improved the same; and that the public travel has, for more than 10 years, been confined to one certain course, with the acquiescence of the owners of the land.

**HIGHWAYS:** Prescription—Evidence—Indefinitely Established Statu-

3  **tory Road.** The recorded location of a highway, when too indef-
inite to meet the demands of an established highway under the stat-
ute, may, nevertheless, have material bearing on the issue of a high-
way by prescription in the same immediate neighborhood.

**SPECIFIC PERFORMANCE: Contracts Enforcible.** Specific perform-
4  ance will *rarely* be denied when it is made to appear that two com-
petent parties have, fairly and understandingly, and without fraud
or overreaching, entered into an unambiguous and definite contract
for the sale of real estate.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

APRIL 1, 1924.

SUIT in equity, for the rescission of a contract for the pur-
chase of certain real estate. The defendant filed a cross-petition,
asking for specific performance of the contract. The court dis-
missed the plaintiff's petition, and entered a decree of specific
performance on defendant's cross-petition. The plaintiff ap-
peals.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger,* for appellant.

*Carr, Cox, Evans & Riley,* for appellee.

FAVILLE, J.—On the 3d day of February, 1920, appellant
and appellee entered into a written contract whereby appellee
agreed to sell to appellant certain described real estate located
in Polk County, for $25,000. Certain brick on the premises
were also included in said contract of sale, and the contract also
provided for the assignment to appellant of a certain contract
between appellee and an interurban company, under which it
was claimed there was a balance due appellee of $5,000. The
contract provided for the payment of $500 at the time of the
execution thereof, which was paid.

On June 25, 1920, appellant instituted this action for the
rescission of said contract, on the ground of concealment in
respect to a certain road and misrepresentation in regard to
the number of acres contained in the tract. During the trial,
a careful survey was made of the land in controversy, and it

was then discovered, for the first time, that the premises consisted of one large tract comprising 15.78 acres and a small tract of .7 of an acre, a total of 16.48 acres. The tracts were 170 feet apart. Appellant contends that the premises were represented to it as being one tract, comprising 18 acres.

I. We first consider the question of the alleged misrepresentation, or mistake, in regard to the area of the premises in question. The lands involved are located in the northwest part of the city of Des Moines, some distance west of Sixth Avenue. The land is platted, and the part contracted for is Lot 13 and the east 315 feet of Lot 14 of the official plat of Government Lots 4 and 5, Section 27; also, all that part lying on the southerly side of the interurban railroad right of way of the north two acres of Lot 17 of the official plat of the E½ of the NW¼, and the SW¼ of the SE¼, and Government Lots 3, 4, 5, and 6, Section 28, Township 79, Range 24. The lands are bounded on the north by the Des Moines River, and the larger tract extends southward to St. Joseph Avenue. Immediately to the east of the larger tract lie Lots 9, 10, 11, and 12, which belong to the Polk estate, and which are referred to in the evidence as the ''Crocker Woods.'' The property has been used for a brick manufacturing plant which had been destroyed by fire, and at the time of the contract there was nothing on the property but a small office building, a shed, a brick chimney, a spur of railroad track, and a small dwelling house, all of which appear to have been in a somewhat dilapidated condition. One Yarn was vice president of appellee company.

1. VENDOR AND PURCHASER: rescission: representation as to acreage.

It appears from the evidence that, some seven or eight months before the contract was entered into, a member of appellant partnership was at the premises in question in regard to another matter, and learned incidentally, on that occasion, that the property was for sale. He asked Yarn how much ground there was, and was told that there were 18 acres, and he says that Yarn pointed out the four corners of the tract, from where the parties were standing at the north end of the tract. Nothing further was done in regard to the matter, and no terms or propositions of sale were made at or about that time.

The day prior to the execution of the contract, a member of

appellant partnership called upon the secretary of appellee company, at his office, and inquired of him with reference to the property in question. There were some negotiations and discussion in regard to the matter, and the member of appellant company made an offer for the property of $25,000, which was accepted. The following day, the contract was signed.

There is some conflict in the testimony as to just what was said in the negotiations at or about the time of the making of the contract, with regard to the acreage. From a careful examination of this record, we are satisfied that there was no misrepresentation in regard to the acreage that was to be conveyed that could in any way be the basis for an action for rescission of the contract. A member of appellant's firm made his own investigation of the premises and his own offer of the purchase price. The conversation with Yarn some seven or eight months previous to the making of the contract was quite casual: neither party was, at the time, negotiating with a view to a sale of the premises. The statement by Yarn to the effect that the property consisted of about 18 acres, made under these circumstances, could not be made the basis of a right of rescission of a contract which was executed months afterwards by other officers of appellee company, without the knowledge or participation of Yarn, and with no knowledge on their part of the alleged representation claimed to have been made by Yarn. The contract contained no recital as to the number of acres to be conveyed. It correctly described the property according to the platting. The property was not sold by the acre, but for a lump sum for the entire area. There was no such misrepresentation in regard to the acreage, under the facts and circumstances shown in this record, as would afford appellant basis for a rescission of the contract.

II. The real battle ground of this lawsuit is in regard to a certain road upon the tract in controversy. The accompanying plat will help to an understanding of the question involved at this point. The premises in controversy are indicated on the plat as the two tracts, Plat A and Plat B.

2. HIGHWAYS: prescription: evidence: sufficiency.

It appears that there has been a road laid out on the south side of Plat A, which is known as St. Joseph Avenue, but which is not open nor suitable for travel. The property in controversy is reached from the southeast by means of a road which is marked upon the plat as "private road," and which, it will be observed, passes across Lots 9, 11, and 12, which, as previously stated, are the property of the Polk estate. The point B on the plat at the southeast corner of Lot 9 is the northwestern extremity of an established highway known as "Prospect Road." To the northwest on Plat B is also another established highway, which is known also as "Prospect Road." The connecting way between these two points is along the road marked "private road," passing from Point B to Point A, and then in a northwesterly direction along the banks of the Des Moines River to the northwest, where an intersection is had with "Prospect Road."

A large amount of evidence was offered by both parties in respect to the road in question. It is the contention of appellant that it was expressly represented to it by the officers of appellee, at or about the time of the execution of the contract, that the road leading from Prospect Road at Point B to the property in controversy was a public highway. Appellant claims that the said traveled road was not and never has been a public highway, and that, in fact, there is no public highway established and laid

out that is accessible to the property in question from the south or east. The evidence in behalf of appellant shows that the road in controversy, marked "private road" on the map, was traveled over the property belonging to the Polk estate, and that appellee paid the Polk estate rental for the use of this road, at $50 per year for the years 1908 to 1915, inclusive. Appellant offered evidence of witnesses familiar with the property in question for many years. From their testimony it appears that there has been a traveled road extending across this ground for many years. It is described as being rather irregular and sinuous in its course. The evidence tends to show that in early days the road that was traveled went in a general northerly direction from Point B toward the river, and then bore to the west, as indicated by the broken lines on the plat. It appears that the road described by the witnesses and indicated by the broken lines has not been used for many years, and is washed out, and to a certain extent obliterated, and is now practically impassable.

It also appears from the record that, about 1895, a coal mine was opened, which is known as the "Bloomfield mine," and which was located at approximately the Point F, indicated on the plat. It appears also that, since that date, the road marked on the plat as "private road" has been followed generally between the Points A and B, as shown on the map, and that this was the only available means of access to the property in question. It is appellant's contention that this road is a private road; that appellee knew of said fact, and paid rental for the road; that the duty rested upon appellee to inform appellant of the true condition in respect to said matter; and that it failed so to do.

If it be true, under the record, that the road marked "private road" is a strictly private road, and if the public have acquired no rights therein in any manner, and if the same can be closed up at the will of the owners of the Polk estate, across whose lands this road runs, then it follows, without argument, that the value of the property in controversy is materially depreciated. Accessibility to the land in question from the southwest is a very material item in determining the value of the property in controversy. It is undoubtedly true that appellant would not have purchased the property, under the circumstances,

if it had been informed and believed that there was no highway extending thereto north and west from the Point B, and that the traveled road now there was a strictly private road, which could be closed at any moment by the owners of the Polk estate, and accessibility to the property cut off in said manner. So that the vital question at this point is whether or not the road marked "private road" can be maintained as a public highway, or whether it is a strictly private road, in which appellant could acquire no rights, under the contract.

Appellee contends that the road in question is, in fact, a public highway, which was laid out and established by the public authorities, and that, in any event, it is a highway by prescription.

It appears that, in June, 1886, the board of supervisors established a consent highway in this locality. The road record in regard to said matter is found in Road Record Book No. 4, at page 148, and is as follows:

"In the matter of the establishment of a consent highway in Valley Township, Polk County, Iowa, petitioned for by T. M. Walker and others. The petition asks for the establishment of a county road beginning from a point at the north side of Prospect Park in the SE¼ of the SW½, Section 27, Township 79, Range 24, thence northwesterly along the Des Moines River and intersecting the public road at the NW¼ of the SE¼, Section 29-79-24, all the parties through whose land the proposed road passes having signed the petition. The above described highway coming before the board of supervisors for their action on June 17, 1886, on motion it was ordered established as prayed for in the petition."

There were also offered in evidence two official road plats, which are substantially alike, and which purport to show the location of the road described in Road Record 4, page 148. The material portion of said plat is as follows:

.We first consider the question as to whether or not the road described in Road Record 4, page 148, is referable to the road in question, and whether, therefore, the same was duly established by the board of supervisors.

It is apparent that the description contained in the road record is too uncertain and indefinite to fix the precise location and termini of the road therein attempted to be described. The record describes the road as "beginning from a point on the north side of Prospect Park in the SE¼ of the SW½ [meant to be SW¼] of Section 27, Township 79, Range 24." This

3. HIGHWAYS: prescription: evidence: indefinitely established statutory road.

"point" does not fit any known description. Under it, the
"point" could be anywhere along the quarter-section line re-
ferred to. Furthermore, there was no record of any platting
of Prospect Park in Section 27. It appears that Prospect Park,
at least as it now exists, lies wholly within Section 34.

There is evidence tending to show that at one time there
was a plat made of Prospect Park, extending north and border-
ing on the river. This plat, however, appears to have been made
solely for the purpose of showing the property, and was never
recorded, and none of the land in Section 27 was platted and
designated by an official plat as Prospect Park.

There is no record that any survey of the road was ever
made; there are no field notes of record anywhere in regard to
it, and no claim that the lines thereof were ever run, or that
the road was ever located on the ground by any monuments.
There has been no building of fences or permanent monuments
on the land in reference to any road upon this territory. No
one could have taken this description and gone upon the land
and definitely located the "point" where this highway had its
"beginning." One would assume from the description in the
road record that the highway began at a "point" somewhere on
the quarter-section line on the north side of Prospect Park in
Section 27, and that this point was at or near the Des Moines
River; for the road is described as passing from this point
"northwesterly along the Des Moines River." But, as previously
stated, there is no evidence that Prospect Park comprised any
part of Section 27, or, if it did so, that it extended to the Des
Moines River, where the "point of beginning" of the highway
was located. We therefore have a situation where the descrip-
tion is too vague, uncertain, and indefinite to furnish the basis
for the legal establishment of a highway. As said in *Yengel v.
Allen,* 179 Iowa 633:

"It is utterly impossible to ascertain from this description
the location of the proposed highway."

See, also, *Lucas v. Payne,* 141 Iowa 592. This would be
especially true if an action were brought to now open and main-
tain a public highway at the place and along the course attempted
to be designated in the road record. The record, however, is not
without its value and importance, as effecting a prescriptive

right to the traveled road in controversy.

III.  Does it follow from the foregoing that the open road located and used upon the tract at the place marked on the map "private road" is a public highway by prescription?

In *Kinsinger v. Hunter*, 195 Iowa 651, we said:

"It is well settled that, although there be no showing of the establishing of a road by statutory proceedings or by express dedication, it may yet be found to have acquired a lawful existence by prescription."

Numerous cases, some of which are collected in the cited case, sustain the above rule.

In this case we have a situation where the owners of a tract of land consented to the establishment of a highway across the same in the same general course as the now traveled track. Even though the action of the board of supervisors was insufficient to legally establish the same, by reason of the defective description contained in its records, and even though there was no sufficient dedication, still the action of the owners was evidence of an intention on their part to consent to the existence of a highway across this tract of land, and in the general direction of the traveled road.

The evidence shows that, at or about the time of the action of the board of supervisors, in 1886, the public began to travel across the lands in question.  The travel was sometimes in one place and sometimes in another, being in a general northwesterly direction across the territory from the Point B, as shown on the first plat, to the Point A.  For a time it appears to have gone northward from Point B to or near the river, and thence northwesterly.  It is quite apparent from the record that the traveled track varied at different times, but maintained the same general course.  There were no fences or similar obstructions at that time.  Finally, it appears that, after the location of the coal mine, in 1895, the travel has been substantially in the same place. It further appears that, during this period of years, the travel has been confined to the same location; the roadbed has been built up and improved somewhat; and cinders and broken brick have been placed thereon.  It also appears that the road has been recognized by the public authorities by doing work thereon, beginning about 1896.  It also appears that certain stockholders

of appellee have worked out their poll tax on this road, and we assume that this was done with the knowledge and consent of the public authorities.

It is significant also that the evidence tends to show that the owner of the land placed a gate across the road, or track, when it extended to the north in the direction of the river, thus shutting off the travel in that direction; and it is established beyond question that the owner of the premises has known for years of the travel along the track as now established and used.

The question of the establishment of a public highway by prescription has been frequently before the courts. We have held that notorious public recognition of a highway, long continued, especially where public use has continued for ten years or more, supplies the place of a formal record of the establishment of a highway. *McAllister v. Pickup,* 84 Iowa 65; *Carter v. Barkley,* 137 Iowa 510; *Kinsinger v. Hunter,* 195 Iowa 651.

Under Code Section 3004, the mere use of an easement in real estate is not sufficient to establish a right thereto, but the fact of the right to the easement must be established by evidence distinct from and independent of the use. Again quoting from *Kinsinger v. Hunter,* supra (page 654):

"Mere permissive use of the way, no matter how long continued, will not amount to a dedication; but if, in addition to the long continued use, it be shown it has been so used with the knowledge and consent of the proprietor,—in other words, if his conduct is reasonably explainable only on the theory of his consent, or upon the theory of his waiver or abandonment of his right for the benefit of the public,—he will not thereafter be permitted to repudiate or deny its legal effect."

But in this case we have more than the mere use by the public. We have a claim of right on the part of the public to a highway across these premises. We have the express consent of record to the establishment of *a* public highway across this tract in the general course of the used track. We have the continued and uninterrupted use of the particular road for a period of more than ten years, in a certain and unchanged location. We have the recognition of this traveled road as a public highway by the public authorities, and the expenditure of public funds thereon. We have the acquiescence by the owners in such

use by the public for more than ten years, without any inter-
ference therewith.

It is contended by appellant that this use of the traveled
track by the public does not establish a highway by prescription,
and that there was no acquiescence, because of the fact that it
appears that appellee herein paid to the owners of the Polk
estate rental at the rate of $50 a year for the use of this road
from 1908 to and including the year 1915.

The road had been used and traveled by the public along
this line for many years before this rental was paid. There was
no interruption in such travel. The rental seems to have been
paid rather because it was asked, than because of any threat to
close the road, or because of a denial of a right to travel thereon.
The rental payments ceased in 1915, and the road has still
remained open and used by the public. No attempt was ever
made to close it or to exclude the public therefrom. The fact
that, under such conditions, appellee paid rental to the Polk
estate for the use of this road, does not estop the public or this
appellant from the right to use this as a highway, or to claim a
prescriptive right therein. The fact that the owner collected
rentals from the appellee as one member of the public for the use
of this land is not binding upon the public in general, nor does
it negative the fact of acquiescence by the landowners in the
continued use by the public.

The owners of the tracts of land upon which the road is now
traveled are not parties to this action, but there is no claim in
the record that they are asserting any rights in the land where
the road is located, or denying the right of the public to use the
same as a public highway.

If it be assumed that acceptance is essential to the establish-
ment of a highway by prescription, there is sufficient evidence of
acceptance in this case to sustain the decree. Public use is in
itself evidence of acceptance, but in addition thereto in this case,
there is evidence of work on the road by the public officials and
the expenditure of public funds thereon. See *Kinsinger v.
Hunter,* supra; *Manderschid v. City of Dubuque,* 29 Iowa 73;
*Carter v. Barkley,* 137 Iowa 510.

In *State v. Green,* 41 Iowa 693, we said:

"To establish a highway by prescription, there must be an

actual public use, general, uninterrupted, continued for the period of the statute of limitations under a claim of right. *State v. Tucker,* 36 Iowa 485, and authorities cited. It is not meant that everyone who travels the road must do so asserting and declaring that he has a right to do so, but the use must be of such a character, and attended with such circumstances, as to evince a claim of the public of the right to do so. This claim might be evidenced by exercising jurisdiction over the road, working it, or expending money in its repairs."

The general rule therein announced has been recognized repeatedly.

In this case we have an actual public use, general, uninterrupted, continued, for more than ten years, and under a claim of right, the latter evidenced by the acts of the owners, in attempting at least to confer such right on the public, and also by the exercise of jurisdiction over the road by the public authorities. This establishes a highway by prescription.

As bearing on the question herein discussed, see *Sherman v. Hastings,* 81 Iowa 372; *McAllister v. Pickup,* 84 Iowa 65; *Brown v. Peck,* 125 Iowa 624; *Barnes. v. Robertson,* 156 Iowa 730; *Joseph v. Sharp,* 172 Iowa 254; *Kinsinger v. Hunter,* supra.

Appellant is seeking to rescind a contract with appellee on the ground of misrepresentation of a material fact with regard to the existence of a road to the property extending in a general northwesterly direction from Sixth Avenue. The burden rested upon appellant to establish that such representation was made, and that it was false, before he would be entitled to rescind his contract. Appellant has failed to establish his contention in this respect..

IV. Appellee sought specific performance of the contract, and prayed decree for the purchase price. This was granted by the trial court, and appellant contends that error lies therein.

Authorities are cited to sustain the familiar

4. SPECIFIC PER-
FORMANCE: con-
tracts enforcible.

proposition that the granting of specific performance of a contract is not a matter of right, but rests in the discretion of the chancellor, and that it will be denied where it appears that the contract is unconscionable, unfair, or was obtained by fraud or undue influence of the party seeking to enforce it. We have frequently so declared. *Throck-*

*morton v. Davidson,* 68 Iowa 643; *Schneider v. Schneider,* 125 Iowa 1; *New York Brokerage Co. v. Wharton,* 143 Iowa 61; *Muench v. Barnell,* 163 Iowa 352; *Origer v. Kuyper,* 183 Iowa 1395.

But where it appears that two competent parties have fairly and understandingly, and without fraud or overreaching, entered into an unambiguous and definite contract for the sale of real estate and the payment of a definite price therefor, specific performance of the contract on the part of the vendee is a matter which a chancellor will rarely deny. The granting of specific performance of such a contract is not a mere matter of caprice on the part of a chancellor. In *Mitchell v. Mutch,* 180 Iowa 1281, we quoted with approval the following from Pomeroy's Equity Jurisprudence (3d Ed.), Section 1404:

"Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach. * * * The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions, and incidents which equity regards as essential to the administration of all its peculiar modes of relief. When all these elements, conditions, and incidents exist, the remedial right is perfect in equity."

See, also, *Carter v. Schrader,* 187 Iowa 1245; *New York Brokerage Co. v. Wharton,* supra; *Monroe v. Servis,* 179 Iowa 583; *Scott v. Habinck,* 188 Iowa 155.

In the case at bar, we think the trial court did not err in granting specific performance of the contract in question. The parties were perfectly competent, and capable of entering into the contract. Appellant sought the trade, and was the moving party in bringing about the contract. Appellee did not institute the negotiations. The selling price was appellant's own offer, which was accepted. The action is by the vendor, to recover the purchase price under the contract. We find from the record

that there was no fraud or misrepresentation or concealment or overreaching on the part of appellee.

It is also contended that the court should have denied specific performance because of the fact that the contract provides for the sale and assignment to appellant of a claim against the interurban railway company, and that the collection of the same is involved in some doubt. There is nothing whatever in the record to show that appellee is not in a position to transfer to appellant exactly what it undertook to sell and what appellant undertook to buy. There is, therefore, no merit in this contention.

It is also urged that specific performance should be denied because the abstracts of title were not furnished at the date fixed in the contract for settlement. They were, however, furnished within a reasonable time, and the requirements of counsel for appellant in regard thereto were fully complied with, the abstracts were redelivered, and have since been retained without objection.

We find no reason shown in the record, or urged by appellant, sufficient to justify a court of equity in denying to appellee a specific performance of the contract. The decree was in accordance with the rights of the parties. Appellant's cause has been presented to us with great earnestness and marked ability, and no single contention in its behalf has been neglected or overlooked. We find that the contract in question was entered into at the solicitation of appellant, and without fraud, misrepresentation, or overreaching on the part of appellee. No good reason appears why the contract should not be performed according to its terms.

The decree of the lower court was correct, and is in all respects—*Affirmed.*

ARTHUR, C. J., PRESTON and STEVENS, JJ., concur.

EVANS, J., not participating.