ROBERT HIXSON et al., Appellants, v. FIRST NATIONAL BANK OF NEW SHARON, Appellee.

**SPECIFIC PERFORMANCE:** Contracts Enforcible—Oral Contract to
1 Loan. An oral contract to make a loan is not specifically enforcible.

**DAMAGES:** Measure of Damages—Breach of Contract to Make Loan.
2 The measure of damages for the breach of a contract to make a loan is, ordinarily, the amount of excess interest paid and the expense of making a new loan.

**SPECIFIC PERFORMANCE:** Contracts Enforcible—Defense. The 3 right to specific performance of a contract to make a loan on security (conceding its specific enforcibility) is terminated by the attaching of noncontemplated liens on the security.

**TENDER:** Necessity in re Equitable Interest. A debtor who induces 4 his agent to purchase an outstanding obligation may not have an assignment of the obligation, in the absence of a tender to the agent of the amount paid by the latter.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

NOVEMBER 11, 1924.

SUIT in equity, for specific performance of an alleged oral contract. Alternative relief is prayed in the form of damages. The defense was, in substance, a general denial. There was a decree dismissing the petition, and the plaintiffs appeal.— *Affirmed.*

*R. J. Smith* and *McCoy & McCoy,* for appellants.

*Frank Bechly* and *Frank T. Nash,* for appellee.

EVANS, J.—The plaintiffs are husband and wife. The husband was the owner of a quarter section of land in Jasper County, and had owned the same since March, 1921. The oral transaction sued on herein was had in the summer of 1923 and prior to September 15, 1923. Such oral transaction was a tentative arrangement between plaintiff Hixson and the cashier of the defendant bank for the financing of certain incumbrances existing upon the plaintiff's farm. Such farm was incumbered by a first mortgage of $11,000 held by a bank at Burlington, Iowa. It was further incumbered by a second mortgage to Katherine Wright for $3,000. It was further incumbered by a quitclaim deed to the defendant herein, given as security for a debt of $1,640. On September 5, 1922, a foreclosure decree was

entered upon the second mortgage, amounting to $3,295, bearing 8 per cent interest. On September 15, 1922, a foreclosure decree was entered upon the first mortgage for $13,326. An execution sale was had under the first mortgage on December 15, 1922. Under this sale, the time for redemption for junior lien holders would expire on September 15, 1923. The initial plan considered by the parties was that plaintiff should negotiate a first mortgage loan of $14,000; that the bank should take a second mortgage for the amount of the remaining incumbrance, which consisted of the decree on the second mortgage and of the $1,640 due the defendant bank and secured by quitclaim deed. It was believed, at that time, that the second mortgage could be purchased at a discount, and it was so purchased by the defendant bank prior to September 15th, for the reduced sum of $2,800. The plaintiff negotiated a first mortgage loan of $14,000. In connection therewith, however, he was required to give a second mortgage for $700, representing a commission for the loan. On August 23, 1923, the plaintiff executed a note and mortgage to the defendant for $4,692. These were accepted by the cashier, subject to the approval of the board of directors. The officials professed disappointment because of the failure of the plaintiff to reduce the indebtedness by the use of any funds of his own. On September 10th, at its first meeting, the board of directors refused its approval of the proposed loan of $4,692, and plaintiff was notified accordingly. On September 15th, the defendant redeemed as a junior lien holder. On September 21st of the same year, the plaintiff brought this action, and it was brought to trial on the 14th of December.

The plaintiff presents a theory of measure of damages to the effect that he lost his farm because of the alleged breach of contract by the defendant, and that such farm was worth from $175 to $200 per acre. He contends that he is

1. SPECIFIC PER-
FORMANCE: con-
tracts enforcible:
oral contract to
loan.

entitled to a decree declaring the defendant a trustee, holding the farm in trust for the plaintiff, or else to a judgment for damages for the value of the farm and of the crops thereon.

It may as well be stated at the outset that the loss of plaintiff's farm cannot be attributed, in a legal sense, to the failure

of the defendant to make the proposed loan.  The plaintiff had until December 15, 1923, to make redemption and to negotiate a loan for that purpose.  If the farm was worth what he thinks it was, and if his debts were no greater than hereinbefore indicated, there was nothing in his way to obtain the necessary loan in a normal money market.  If he had other indebtedness, and if the valuation of the farm was not such as to render marketable security for the proposed loan, then that was sufficient reason why the board of the defendant bank should reject the same. Indeed, for such reason, it would have been obligatory upon them to reject the same.

The appellant cites us to no authority holding that specific performance may be had of an oral contract to make a loan.

**2. DAMAGES: measure of damages: breach of contract to make loan.**
We know of no such authority.  Adequate remedy may be had in damages.  Ordinarily, the measure of such damages is the excess of interest, and perhaps expense attending the negotiation of another loan.

If specific performance would otherwise lie, it was incumbent upon the plaintiff to tender full performance on his own part and to keep the tender good pending the litigation.  It

**3. SPECIFIC PERFORMANCE: contracts enforcible: defense.**
appears, however, that the plaintiff had other debts, and that, in January, 1923, a judgment for $858 had been entered against him in Poweshiek County.  A transcript of this judgment was filed and entered in Jasper County on October 15, 1923.  This became a lien on plaintiff's right of redemption.  It became such after the beginning of the suit, but before trial.  This judgment lien interposed insuperable obstacles to carrying out the contract here sued on, and plaintiff must be deemed responsible for the obstacle.  He made no tender of any kind in reference thereto. The effect of the continuance of such judgment lien of itself terminated the right to specific performance, if any he otherwise had.

Plaintiff directs our attention to the fact that the defendant bank purchased the Wright mortgage at a discount of about $500, and that this was done at the request of plaintiff and in

his behalf, and that he is entitled to the benefit of the discount thus obtained. Assuming this to be so, in a legal sense, he became entitled to an assignment of such judgment upon a tender of payment of $2,800, and not otherwise. He furnished none of the funds with which the judgment was purchased. The contract of purchase and sale was made between the defendant bank and Katherine Wright, the owner of the mortgage. The bank paid for it with its own money, and the judgment holder assigned it directly to the bank. The bank, therefore, held the legal title. If, because of the alleged agency of the bank in the purchase of the same, the plaintiff could be deemed to have an equitable right in such mortgage and an equitable right to have the same transferred to him, it was incumbent upon him to tender the purchase money, as a condition precedent to his remedy. He did not do so, either before suit or afterwards. In the absence of such tender, he is entitled to no equitable relief.

*4. TENDER: necessity in re equitable interest.*

We are not unmindful of the apparent hardship to the plaintiff that he should have been unable to make redemption of his land. His inability to do so can be ascribed only to the deficiency of his security. The defendant bank and its officers not only were not required to close their eyes to such deficiency, but they were under a solemn legal obligation to open their eyes to that very objection to the security.

The decree of the trial court was unavoidable, and it is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.