HENRY ANDERS, Appellant, v. E. F. CROWL et al., Appellees.

No. 40029.

470 

March 18, 1930.

Rehearing Denied June 23, 1930.

*George Finch,* for appellant.

*T. P. Cleary* and *C. R. Jones,* for cross-appellants.

*Jepson, Struble & Sifford,* for Emma Johnson and John F. Johnson, appellees.

*Griffin, Griffin & Griffin,* for E. F. Crowl, appellee.

Morling, C. J.—Plaintiff sold 40 acres of land to defendants Emma Johnson and John F. Johnson, husband and wife. The Johnsons, on March 1, 1920, executed to plaintiff note and purchase-money mortgage for $16,000, due March 1, 1930, with interest payable annually. The mortgage was a first lien on the 40 acres. Plaintiff assigned and delivered the note and mortgage to Westphalen, as collateral security for money borrowed of Westphalen, aggregating, at time of decree, $7,240.26. Westphalen died, and the possession of the note and mortgage came to his executors, who have been brought into the case on the cross-petitions later referred to. Defendant Crowl entered upon negotiations with defendants Johnson for the purchase of the 40 acres. The $16,000 note and

mortgage were the subject of conversation between Crowl and the Johnsons. Crowl undertook negotiations with plaintiff with respect to this note and mortgage. These negotiations resulted in the written agreement which is the subject of the suit and cross-suits. It reads:

"Whereas, E. F. Crowl of Cherokee, Iowa, is contemplating the purchase from Emma Johnson and husband of [the 40 acres described] on which I, Henry A. Anders, hold a first mortgage for the sum of $16,000 drawing interest at the rate of 5% per annum and due March 1, 1930.

"Now therefore, I agree with the said E. F. Crowl that if he does enter into a contract to purchase and does purchase the said property from the said Emma Johnson on or before March 1, 1928, I will execute and deliver to the proper parties a release in the usual form of the said $16,000 mortgage provided as follows:

"1. There shall be paid to me the sum of $3,000.00 being the proceeds of a loan for that amount being negotiated by John Stock, agent of Sioux City, Iowa, the said loan to be secured by a first mortgage upon the said land, to be due in approximately five (5) years and to draw interest not to exceed 6% per annum, payable annually.

"2. There shall be executed and delivered to me by the said E. F. Crowl and wife, a mortgage second to the said mortgage of $3,000 for $13,000, upon the said land to mature on or before January 15th, 1938, drawing interest at the rate of 5 per cent per annum, payable annually on the 15th day of January ["15th of January" is marked out with ink, and "March 1st" written·in] of each year, and said mortgage to be executed upon Perkins Bros. form No. 15, and which mortgage shall in terms provide that the mortgagor shall keep the premises adequately insured in some responsible insurance company or companies, making loss, if any, payable as the interests of the parties shall appear, and shall further provide that the said mortgagors shall pay the interest on the said first mortgage of $3,000 before the same shall become delinquent and in the event of a failure to make such payment, I, the mortgagee in the said mortgage for $13,000 shall be entitled to pay the same and add the amount thereof to the amount of my mortgage, it being distinctly under-

stood that the said mortgage for $13,000 shall be second only to the said mortgage of $3,000.

"It is further understood that in the event the said E. F. Crowl shall fail to enter into a contract with the said Emma Johnson for the purchase of said land, this agreement shall be null and void and in the event he does enter into such a contract, the mortgage to me for $13,000 shall be dated January 15, 1928, and draw interest from that date, subject to proper adjustment of the matter of interest.

"In witness whereof, I have hereunto set my hand this 31st day of December, A. D. 1927.

"Henry A. Anders,

"E. F. Crowl."

"In the presence of Edwin J. Stason."

After getting the contract from plaintiff, Crowl entered into a contract with the Johnsons on the same day, by which the Johnsons agreed to convey to Crowl the 40 acres, "subject to mortgage to Henry A. Anders for $16,000" and interest to March 1, 1928, and certain assessments, and clear of all other liens. Crowl, on delivery of the deed and abstract, agreed to pay the Johnsons $2,000 for their equity.

The parties, before drawing the agreement in suit, interviewed Stock, and discussed the matter of making an agreement, and the question by whom the agreement should be drawn. It was agreed that Mr. Stason, a lawyer, should draw it. Plaintiff and Crowl thereupon went to Mr. Stason's office, and the agreement was then and there drawn and signed. Plaintiff testifies that he was subjected to menace to compel him to sign the agreement, and that the agreement so drawn was falsely read to him, and that he was unable to read it himself. Immediately after signing the contract, plaintiff took it to a friend (Peterson), and together they went to a lawyer, Mr. Pizey. Mr. Pizey drew for them and mailed notices dated December 31, 1927, which read as follows (properly directed):

"You are hereby notified by the undersigned that he refuses to perform the contract this day subscribed by him and E. F. Crowl at Sioux City, Iowa; and concerning the following described real estate situated in Woodbury County, Iowa; the Southeast Quarter of the Southeast Quarter of Section 27, Town-

ship 89, Range 45, for the reason that said contract is without consideration and was wrongfully obtained by E. F. Crowl from the undersigned. Henry A. Anders.''

I. It will be seen that this notice says nothing about deceit or misunderstanding. The ground of refusing to perform is said to be that the ''contract is without consideration and was wrong-. fully obtained by E. F. Crowl * * *'' Plaintiff's testimony is:

''Stason read the contract out loud to me. * * * When Stason read the contract, I didn't know whether he read $3,000 or $5,000. * * * I got the right of it right by Peterson. When I got to Peterson, I told him I want it should stand in there for $5,000, and let the mortgage run the 10 years out. I do not know if Stason read $5,000 instead of $3,000 in the contract. They sure tricked me. I always said I wanted it $5,000. Maybe I did not understand Stason when he read it. * * * I showed him [Peterson] this paper, and he said, 'Well, Henry, all for their part and nothing for you.' I said, 'Don't it say in there I shall have $5,000 on the note of the Johnsons and leave the rest to run out in 10 years?' 'No, no, Henry, there is nothing in there for that.' So he said, 'We will go to our lawyer.' And he took me to his lawyer, and wrote them a letter I would not go through with the contract.''

The evidence shows that plaintiff is well along in years; that he had had a severe surgical operation; that he was nervous, vacillating, and forgetful. He had wholly forgotten that the note and mortgage were in the possession of Westphalen. He admits: ''I have some trouble with my memory. It is poor. I may be missing some of my transactions with Crowl.'' No useful purpose would be served in discussing the evidence in detail. Plaintiff's testimony that he was menaced and deceived is directly contradicted by Crowl and Stason, and also by Stock, to the extent that the transactions occurred in his presence. Stason and Stock are disinterested, and no reason for discrediting either of them appears. Plaintiff has the burden of proving fraud. His claim of fraud is wholly refuted. Mental incompetency is neither alleged nor proved. The court properly denied cancellation.

II. Crowl filed cross-petition for specific performance of . the written agreement. The Johnsons likewise filed cross-peti-

tion asking for specific performance, though they were not parties to the contract. After discovering that Westphalen held the paper, Crowl amended his cross-petition by impleading Westphalen and asking specific performance against Westphalen, though Westphalen was not a party to the agreement. Later, Westphalen's death was suggested, and defendant executors were substituted. By the terms of the contract, the mortgage was to be executed by Crowl and wife. The wife is not a party to this litigation.

The Johnsons, on January 3, 1928, received the notices of plaintiff's refusal to perform. The evidence does not show that the notice mailed to Crowl was received by him. The Johnsons informed Crowl of their receipt of the notice, but whether before or after the completion of their deal with Crowl, about to be referred to, is uncertain. On January 13, 1928, Crowl paid to the Johnsons the $2,000, and they delivered to him their deed of the land. The deed is not set out in the abstract. Crowl took possession March 1, 1928, and is in the full enjoyment of the property. There is no evidence that Crowl has tendered, or (specifically) that he is able to pay, $3,000 or any other sum, or that he and his wife have ever signed or tendered to plaintiff a mortgage for $13,000 or for any sum. There is no evidence whatever in respect to the state of the title to the 40 acres, or whether or not a mortgage for $3,000, which will be a first lien, or a second mortgage for $13,000, which will be a lien subject only to a mortgage for $3,000, can be executed by Crowl and wife. It does appear, however, that there are outstanding against Crowl in Cherokee County judgments unsatisfied of record, and also unsatisfied chattel mortgages and unpaid taxes for 1920 to 1926, inclusive. As to most of the judgments Crowl testifies that he has made settlement or payment, or is ready to do so. As to one judgment for $64 he says: "I have felt I never owed. If he can prove I owe it, I am willing to pay it." As to another he says: "I have receipts for this, marked 'paid in full.' How the judgment was there, I don't know anything about it." As to another judgment he says:

"This judgment of O. F. Crowl against me for $3,500 given out of a threshing machine transaction between me and my

father. I have certain assignments from my father to be applied on this debt. He has not released it yet, but it will be done. It has been paid in full.''

As to a chattel mortgage given to the First National Bank of Cherokee, Crowl says:

''I borrow lots of money from them, and paid part of it, and we just let the mortgage stand. Three months ago, I went over and paid them all I owed them. I think they will tell you that.''

It does not appear that he produced any of his claimed receipts. He gave a chattel mortgage to defendants Johnson. He says it is for stock and corn purchased. ''I gave him a chattel mortgage on some other property. I can pay Mr. Johnson now, if he wants the money.'' As to taxes, he says: ''I don't deny that we owe the $613 shown in this certified list. The taxes have not been paid.''

The decree appealed from awards specific performance in favor of Crowl and of the Johnsons, who are not parties to the contract. This remedy is awarded, not only against plaintiff, but against the executors of the estate of Westphalen. Westphalen had nothing to do with the contract. The decree awards specific performance as to Crowl's wife, though she was not a party to the contract. The decree directs the plaintiff and the Westphalen executors ''to execute and bring into court a good and sufficient release of the certain real estate mortgage heretofore described, and in the event that they or either of them refuse to do so within 20 days after this date, the clerk of this court is hereby appointed a commissioner to execute said release for and in their name, with the same force and effect as if they themselves had released it, and the defendant E. F. Crowl is directed to prepare and execute and bring into court a good and sufficient second mortgage in the sum of $13,000 * * * to be signed by the said E. F. Crowl and his wife, and the defendant E. F. Crowl is then, after said first mortgage has been duly released, in accordance with this decree, directed to proceed to secure a $3,000 first mortgage upon said premises, and to pay the said sum of $3,000 to'' the Westphalen executors, ''the same to be credited by them upon the indebtedness which they hold

against the plaintiff, Henry Anders, and said $13,000 second mortgage and the note going with the same is to be turned over to the said'' executors, ''to be held by them as collateral security for the remaining indebtedness which Henry Anders owes to them; and the plaintiff Anders is directed by the court to assign said $13,000 note and mortgage to said executors, and upon his failure to do so, the clerk of this court is appointed as a commissioner to do in his stead, with the same force and effect as if said Anders had done so, and the said'' executors ''are to then return to the defendants John F. Johnson and Emma Johnson the $16,000 note which they are now holding as collateral, * * * and the court hereby retains jurisdiction of the subject-matter and the parties, to the end and for the purpose of making such further order and decree herein as may be necessary to carry out its decree * * *''

Crowl pleads and testifies, in general terms, that he is ready, able, and willing to perform the contract; but there is no specific evidence that he is able to perform. On the contrary, a strong inference arises from the record that Crowl is insolvent, and compliance with the decree might result in immediate transcription of judgments and delinquent tax certificates, if not proceedings to subject the land to the payment of debts. Not merely plaintiff, but the holders, are required by the decree to release the mortgage, and while the $3,000 first mortgage is being negotiated, to lay the property open to judgment liens and possible attachment liens against Crowl, and subject plaintiff to the necessity of proceedings to remove the same. This is on the further provision of the decree that Crowl and his wife shall execute the mortgage, though the court has no jurisdiction of the wife. Westphalen or his executors never incurred any liability to Crowl or the Johnsons. They are not parties to the contract, yet they are required to execute this release, and required to accept as collateral, in place of a note and first mortgage due in 1930, executed by the Johnsons, a second mortgage due in 1938, executed by Crowl and wife,—and all this without any showing whatever that Crowl is able to execute a mortgage that will be a lien on the land subject to no other liens than the proposed first mortgage.

Specific performance is an equitable remedy. The court will grant the relief only in the exercise of an equitable discretion.

*Braig v. Frye,* 199 Iowa 184, 192. Specific performance will be decreed only when it would not be inequitable to do so. Ability of the party demanding specific performance to perform on his part must be shown. Idem. The contract, on the facts, is not one of which specific performance will be granted. *Hixon v. First Nat. Bank,* 198 Iowa 942.

There must be mutuality. *Marti v. Ludeking,* 193 Iowa 500, 502, 504. Equity will not grant the relief to the prejudice of innocent third persons. Crowl has the land, the title, possession, and full enjoyment. Inadequacy of remedy at law is the basis of the remedy by specific performance. Inadequacy of legal remedy or irremediable injury to Crowl, the only party to the contract with plaintiff, is not shown. The assignment of the mortgage to Westphalen was not recorded. Anders's promissory note for $16,000 is payable to Anders's order, and is not indorsed by him. Crowl and the Johnsons argue that they are, therefore, not bound by Anders's pledge to Westphalen. The statute is:

"No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless filed in the office of the recorder * * *" Section 10105, Code, 1927.

If the statute is applicable to the case (see *Reyelts v. Feucht,* 206 Iowa 1326), the burden is upon Crowl and the Johnsons to prove that they are subsequent purchasers for a valuable consideration, without notice. *Loranz & Co. v. Smith,* 204 Iowa 35. If Crowl or the Johnsons had paid Anders the amount of the mortgage, they would not be protected, for the simple reason that the note was, to the extent of the amount of Anders's indebtedness to Westphalen, the property (as collateral) of Westphalen. Anders was not Westphalen's agent, actual or ostensible, to collect the note or mortgage. He had no authority to receive payment. He did not have possession of the instrument. Crowl or the Johnsons, in paying Anders without production of the note, would have done so at their peril. *Wood v. Swan,* 206 Iowa 1198; *Ritter v. Plumb,* 203 Iowa 1001; *Shoemaker v. Nodland,* 202 Iowa 945; *Shoemaker v. Minkler,* 202 Iowa 942; *Shoemaker v. Ragland,* 202 Iowa 947. Crowl made the contract

with Anders. If he or the Johnsons relied upon it, they did so at their peril.

For these various reasons (as well as others), Crowl and the Johnsons are not entitled to specific performance. The decree so far as it denies cancellation is affirmed. So far as it grants specific performance it is reversed. The costs will be taxed one third to plaintiff, one third to Crowl, and one third to the Johnsons.—*In part affirmed; in part reversed.*

STEVENS, DE GRAFF, ALBERT, and WAGNER, JJ., concur.