FIRST TRUST JOINT STOCK LAND BANK, Appellee, v. EARL RESH et al., Appellants.

No. 44478.

APRIL 4, 1939.

Lester L. Orsborn and Ferguson & Ferguson, for appellants.

H. H. Lommen, Keenan, Clovis & Sar, and Stipe, Davidson & Davidson, for appellee.

MILLER, J.—The original action commenced herein was one at law to recover rent claimed by appellee bank from appellants for the use and occupancy of certain real estate by them. In appellants' answer, they admitted certain rent was due, and denied other items of the bank's claim. They also asserted a counterclaim based upon an alleged oral contract between the bank and appellants whereby the bank was to sell and the appellants were to buy the real estate in question for the sum of approximately $10,750. Issue was joined on the counterclaim. The equitable issues were transferred to the equity side of the calendar and docketed as an independent suit. Trial was had on these issues alone, resulting in a decree denying specific performance. The court retained jurisdiction of the matter of accounting as to the rents due for the use of said real estate. Appellants appeal from the decree denying them relief by way of specific performance.

In the counterclaim filed by appellant Resh, he alleged that on January 9, 1928, he was the owner of the real estate involved and executed a mortgage thereon; that on October 29, 1932, foreclosure of the mortgage was commenced, resulting in a decree and sale of the premises to the appellee bank on May 2, 1933; that the bank urged Resh to redeem the real estate through the Federal Land Bank of Omaha, and in July 1934,

the Federal Land Bank approved a loan of $9,500, which approval was reported by Resh to one Kirlin, as agent of appellee; that Kirlin informed Resh that appellee might accept $11,000, and Resh made further application for an increased loan; that on December 5, 1934, appellee offered to accept approximately $11,000, conditional upon the funds becoming available on or before January 15, 1935, and advised that Kirlin would contact Resh; that Kirlin did contact Resh and on January 7, 1935, stated he would submit to appellee a proposition of Resh paying $10,750 for the real estate and Resh advised Kirlin that if appellee would accept said sum, he would endeavor to get a loan from the Federal Land Bank of Omaha to meet it; that a lease was entered into through Kirlin, conditional upon the contract of purchase not being consummated; that on February 7, 1935, the Federal Land Bank approved a total commitmen'. of $11,000 to Resh, who informed Kirlin of such approval, and Kirlin orally accepted the proposition, stating he would report the same to appellee bank; that on February 18, 1935, appellee wrote one Linburg, as alleged agent of the Federal Land Bank, enclosing its agreement to accept $10,750 with interest from January 15, 1935, payment to be made by March 15, 1935, and on February 25, 1935, Kirlin wrote Resh thereon; that on March 1, 1935, Resh took possession of the premises under the alleged oral contract and, therefore, that the lease did not go into effect; that appellee bank failed to furnish the necessary abstracts to the Federal Land Bank until March 16, 1935, and, by failure to deliver the abstracts, waived compliance with the terms of the contract; that, had the abstracts been furnished in time, the loan would have been completed and, by reason of such waiver, Resh had a reasonable time to make payment under the contract; that on March 30, 1935, appellee, without cause, notified the Federal Land Bank to take no further steps in view of the funds not becoming available by March 15, 1935; that the inability to perform was due to a default of appellee bank; that on May 13, 1935, Resh, through his attorney, Earl Ferguson, tendered performance of the contract, which tender was refused by appellee and which tender is renewed by Resh in his pleadings; that Resh is ready, able and willing and has been at all times ready, willing and able to perform the agreement. Resh prayed for equitable relief by way of specific performance of the alleged oral contract.

In the answer of the appellee bank to the counterclaim, the bank admitted the writing of various letters referred to in the counterclaim and denied the other allegations thereof. Appellee also asserted various specific defenses, which included the following contentions: That the counterclaim fails to allege a contract; that the alleged contract is too indefinite and uncertain; that the alleged contract is within the statute of frauds; that the allegations of the counterclaim are insufficient for the granting of relief by specific performance; that Resh is not ready, willing and able to perform the contract; that the alleged contract did not obligate appellee to furnish an abstract and Resh was not excused from performance of the contract on his part; that the order of the trial court, sustaining appellee's motion to dismiss a former counterclaim asserted by Resh, constituted an adjudication between the parties and the amended counterclaim, being an effort to change position to avoid the statute of frauds, should be unavailing because Resh should be bound by his first election. Appellee bank prayed that the counterclaim be dismissed and that title to the real estate be quieted in appellee.

At the trial, the parties undertook to introduce evidence to support most of the contentions set forth in the pleadings, as above reviewed, and the briefs and arguments filed in this court discuss practically all of the issues thus presented. It is necessary for us to pass upon but one of the issues, because it appears to be clearly decisive. That issue is whether or not Resh made a proper showing that he was ready, willing and able to perform the alleged contract.

The rules of law, applicable to this issue, have been recognized by this court on numerous occasions. In the case of Finch v. Gates, 210 Iowa 859, 861, 229 N. W. 832, 833, we state:

"Specific performance of a contract to sell real estate is not an absolute right, and ordinarily is to be granted or denied by the court in the exercise of a sound judicial discretion. Kurtz v. Gramenz, 198 Iowa 222, 198 N. W. 325; Cohen Bros. Iron & Metal Co. v. Shackelford Brick Co., 197 Iowa 674, 198 N. W. 318; Carter v. Schrader, 187 Iowa 1245, 175 N. W. 329; Mitchell v. Mutch, 180 Iowa 1281, 164 N. W. 212; Eller v. Newell, 159 Iowa 711, 141 N. W. 52."

Again, in the case of Anders v. Crowl, 210 Iowa 469, 476, 229 N. W. 744, 748, we state:

"Specific performance is an equitable remedy. The court will grant the relief only in the exercise of an equitable discretion. Braig v. Frye, 199 Iowa 184, 192, 199 N. W. 977. Specific performance will be decreed only when it would not be inequitable to do so. Ability of the party demanding specific performance to perform on his part must be shown. Idem."

In the case of Giltner v. Rayl, 93 Iowa 16, 21, 61 N. W. 225, 226, we state:

"The rule, time and again announced by all the authorities, is that a party cannot call, as a matter of right, upon a court of equity to specifically enforce a contract; that its exercise rests in the sound discretion of the court in view of the contract of the parties and the surrounding circumstances. A party demanding its exercise is bound to show he himself has always been ready, willing, and eager to perform on his part."

In the case of Wold v. Newgaard, 123 Iowa 233, 236, 98 N. W. 640, 641, we state:

"We are satisfied that the decree is erroneous, and that plaintiffs are not entitled to any specific performance, for the reason that they have not performed, and are not ready and able to perform, their agreement."

Many other decisions to the same effect might be added to the foregoing. Also in the case of Huie v. Falde, 197 Iowa 289, 290, 197 N. W. 58, 59, we state:

"It is true, as a general rule, that a plaintiff suing for specific performance of a contract must allege that he has performed all of the conditions of the contract on his part, or has tendered performance of all of such conditions before the action was commenced, and upon trial must prove these material allegations of his petition. Dierksen v. Pahl, 194 Iowa 713, 190 N. W. 423; Billick v. Davenport, 164 Iowa 105, 145 N. W. 470; Totty v. Harris, 82 Iowa 645, 48 N. W. 1050; Goettsch v. Weseman, 185 Iowa 1213, 171 N. W. 674; Waters v. Pearson, 163 Iowa 391, 144 N. W. 1026; Button Land Co. v. Noon, 163 Iowa 547, 145 N. W. 67."

In the case of Barrett v. Wiskus, 196 Iowa 1281, 1285, 196 N. W. 14, 16, we state:

"In order to maintain his right to specific performance, however, it became incumbent upon the plaintiff to tender performance on his part, in substantial accord with the requirements of the contract."

In the case of Hixson v. First Nat. Bank, 198 Iowa 942, 945, 200 N. W. 710, 711, we state:

"If specific performance would otherwise lie, it was incumbent upon the plaintiff to tender full performance on his own part and to keep the tender good pending the litigation."

Counsel for appellants prepared the counterclaim in accordance with the rules of law set forth in the above quotations. They allege that Resh "is ready, able and willing at this time, and has been at all times since the making of said agreement * * * ready, able and willing to perform the said agreement." Counsel also allege that Resh "did tender to the plaintiff herein a full performance of the terms of said agreement, a copy of which tender is attached hereto, marked Exhibit 7, and made a part hereof, but that the same was refused by the plaintiff herein, which tender these defendants renew at this time herein." The Exhibit 7 is a copy of a letter written to the appellee bank by Earl Ferguson, attorney for appellants, in which he states: "This money is waiting for you. We now formally tender this money, to-wit: $10,750.00 to you, together with interest on that sum of money from January 15, 1935." The allegations of the counterclaim were sufficient to meet the requirements of the law. The difficulty with appellants' case lies in the fact that the evidence wholly fails to sustain said allegations.

The record shows that the foreclosure sale to appellee bank was had on May 3, 1933. The period of redemption expired May 2, 1934. Sheriff's deed was issued to the appellee bank on May 12, 1934. Accordingly, Resh was undertaking to buy real estate in which he had lost all right of redemption.

Kirlin testified as a witness for appellants that, on February 8 or 9, 1935, Mr. and Mrs. Resh came to his office, advised him that they had received a commitment of $11,000 from the Federal Land Bank, and that they would pay the amount

which Kirlin asked, $10,750, for the real estate herein. Resh described this transaction with the following statement: "They were to have $10,750.00 and I was to have the receivership money to pay the taxes and they were to have interest until they got their money." The record is clear that, if there was a contract, Resh was obligated to pay $10,750. While the letter of Earl Ferguson purports to tender this amount of money and states: "This money is waiting for you," if the money was in fact waiting for the appellee bank, it was not in the hands of Resh and Resh had no authority to turn it over to the bank. The purported loan with the Federal Land Bank of Omaha was never completed. The expected proceeds from it never became available and the record is absolutely devoid of any evidence that Resh ever had $10,750 to pay to the appellee.

In undertaking to show that he was ready, willing and able to perform the contract, Resh testified that he was willing to make application to the Federal Land Bank and to turn over to the appellee bank the proceeds of a loan and pay them $10,750 and the taxes and interest from January 15, 1935, to March 15, 1935, or such time thereafter as may have been caused by the delay of appellee in not furnishing the abstracts, and to pay the costs of the receivership, if appellee would give him good title to the farm and turn over to him the receivership funds, provided the court should give him a reasonable time to complete the transaction. Arthur Linburg, secretary-treasurer of the National Farm Loan Association for the Farragut and Essex offices, testified on behalf of appellants that he would have to take a new application for the loan because an application is not good for more than a year. Accordingly, all that appellant testified to was that he was willing to undertake to negotiate a loan on the real estate and, if such a loan were secured and the proceeds were sufficient, he would pay appellee bank the stipulated purchase price. There is no application now pending for such loan. There is no competent or convincing evidence that the application, if made, would be successfully terminated. The evidence is far short of that required to make a showing that appellant was ready, willing and able to perform his contract.

A somewhat analogous situation is presented in the case of Griffey v. Lubben, 196 Iowa 465, 193 N. W. 410. In that case, the plaintiff sought to secure specific performance of a contract

to sell real estate. Plaintiff owned the real estate and had agreed to convey the same for the purchase price, free and clear of incumbrance. Pending the completion of the . contract, plaintiff placed two mortgages on the real estate, one for $5,000 and one for $6,000. In passing upon the ability of plaintiff to perform the contract, this court states, 196 Iowa at page 469, 193 N. W. at page 412, as follows:

"Griffey explains this by saying that he made these mortgages to meet his temporary needs, and that he could and expected to remove these liens 'if the defendant came across' with her payment to him. In other words, it was his purpose to make use of the money which defendant would pay him, to clear up his title and thus fulfill his contract. Even if the contract had not been modified, we are of the opinion that plaintiff's intention, no matter how honestly entertained, to use the money collected from defendant in paying off the mortgages, is not the equivalent of present readiness, willingness, and ability to convey an unincumbered title."

The above quotation, standing alone, might be subject to erroneous interpretation. What this court clearly holds is that good intention alone is not the equivalent of ability to perform. There are instances in which, if proper acts accompany the intention, a vender may be able to perform his contract even though the title is not free. from incumbrance. In such case, in addition to his intention to apply the purchase price to satisfy the liens, the vendor must take such action that the vendee is assured that the liens will be removed and that, upon performance by the vendee, the vendor will be able to forthwith convey valid title.

However, in this case, the only evidence offered by appellant in an effort to demonstrate ability to perform on his part is evidence of good intention. The original tentative commitment of the Federal Land Bank was subject to conditions There is no evidence to establish that such conditions were or could have been met. While some complaint is made about the failure to furnish an abstract, there is no evidence that, if the abstracts had been furnished sooner, the transaction would have been completed in time. The appellee bank waited until March 30, 1935, before objecting to the failure of appellant to have the funds available by March 15, 1935. There is no showing

why the funds were not made available between the date the abstracts were received and March 30, 1935. As above stated, there is no application for a new loan now pending. There is no evidence that if such application were made sufficient funds would be available to permit appellant to perform his contract. The evidence of good intention is not accompanied by the necessary showing of ability to perform, which must be in addition to evidence of willingness to perform.

It is unnecessary to consider the other contentions raised by counsel for appellants. The evidence wholly fails to establish that Resh was ready and able to perform the contract, if there was a contract. He was not entitled to a decree compelling specific performance on the part of appellee bank. The trial court so held. Its decree is affirmed.—Affirmed.

MITCHELL, C. J., and HAMILTON, HALE, SAGER, and BLISS, JJ., concur.