**O. K. TIRE AND RUBBER CO., Inc.,**
**Appellant,**
**v.**

**William R. OSWALD, Appellee.**

**No. 53314.**

Supreme Court of Iowa.

April 8, 1969.

Johnson, Burnquist & Erb, Fort Dodge, for appellant.

John W. Gailey, Fort Dodge, for appellee.

MOORE, Justice.

This is an equity action for an injunction restraining defendant from continuing to

operate his business under the name "O.K. Tire Shop" or other similar names authorized pursuant to a franchise agreement between the parties which had been terminated and for specific performance of an equipment repurchase agreement. Defendant's answer asserted a claim of $3,028.00 against plaintiff. The facts were stipulated in the trial court. The court found "neither party can recover from the other" and taxed the costs equally against the parties. Plaintiff has appealed. Defendant has not cross-appealed or appeared in this appeal.

I. Since defendant has not appealed from the decree and judgment of the trial court denying his claim he is not entitled to a more favorable decision here. Kellerhals v. Kallenberger, 251 Iowa 974, 976, 103 N.W.2d 691, 692, and citations; Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 1115, 109 N.W.2d 695, 702; Decker v. Juzwik, 255 Iowa 358, 371, 121 N.W.2d 652, 659. See also 5 C.J.S. Appeal & Error § 1498b, page 851; 5 Am.Jur.2d, Appeal and Error, section 653, page 104. Thus our attention is directed to the propositions relied upon by plaintiff for reversal.

This being an action in equity our review is de novo. Rule 334, Rules of Civil Procedure.

Plaintiff asserts the trial court's decision was not in accordance with the record, it was entitled to an injunction to protect its trade names and a decree of specific performance under the repurchase agreement. We agree.

II. Plaintiff's petition, filed December 14, 1967, alleged its predecessor on November 28, 1961, entered into an "Operator's Auto Franchise Agreement" with defendant for the operation of a tire sale and servicing business, use of the "Auto Float Process" and use of its name in the City of Fort Dodge. A copy of the agreement was made a part of plaintiff's petition. It further alleged that pursuant to paragraph 21 of said franchise agreement plaintiff on July 13, 1967 caused to be served on defendant its written notice of election to terminate said agreement, effective in 30 days and that defendant continued thereafter to use plaintiff's registered trademarks and trade names. It alleged irreparable damage was being caused.

Plaintiff's petition further alleged that shortly prior to the execution of the franchise agreement plaintiff's predecessor also entered into an "Order and Continuing Sales Agreement and Purchase Option" with defendant for the purchase of goods and equipment by defendant and for options to repurchase certain equipment if plaintiff so elected. A copy of this agreement was also attached to and made a part of plaintiff's petition. Plaintiff alleged defendant had not purchased goods or equipment of it for three or four years, it had exercised its option to repurchase a James Auto Float Truing Machine for $259 under the price formula fixed by the contract and that defendant had refused to accept its tender of $259 and deliver back to plaintiff said machine which defendant had purchased five years previously. It prayed for a decree of specific performance. It is unnecessary to set out the additional allegations of the petition.

Defendant's answer admitted execution of the two agreements, he had received the notice of termination of the franchise agreement and that he was continuing to operate under the name of "O.K. Tire Shop". He alleged a right to do so because plaintiff had waived all remedies under said agreement and was estopped from claiming any remedy and rights thereunder. Defendant's answer denied purchase of a truing machine and receipt of notice of election by plaintiff to repurchase.

Defendant's answer affirmatively alleged plaintiff had violated the terms of the agreements by setting up another O.K. dealer in the restricted area and that if plaintiff was entitled to reclaim a truing machine it was also required under the purchase agreement to reclaim other ma-

chines and equipment in the total depreciated amount of $3,028. Defendant's answer prayed plaintiff's petition be dismissed or in the alternative plaintiff be required to reclaim all machines and equipment and he be compensated for the depreciated value thereof. He filed no counter-claim.

Plaintiff's reply denied the affirmative allegations of defendant's answer. The pleadings narrowly limited the issues presented to the trial court.

The controversy was submitted to the trial court on a stipulation of the parties. Copies of the two agreements and the letters in reference to termination of the franchise agreement and of the exercise of the repurchase option of the truing machine were received in evidence.

It was further stipulated defendant had in his possession one James Auto Truing Machine which was purchased from plaintiff's predecessor, it was over five years old and its depreciated value under the formula set out in the repurchase agreement was $259.

The stipulation stated defendant since the franchise agreement had operated under the name "Oswald's O.K. Tire Shop" and had at all times displayed plaintiff's trade name sign "O.K." and used letterheads and advertising bearing the name "O.K." in some form or other.

The parties also stipulated defendant would testify that since September 1967 plaintiff had knowledge of and tolerated use of the trade and style name "O.K. Tire Store" at 1105 First Avenue North in Fort Dodge by Jack W. Limbaugh, plaintiff's franchise dealer at Algona, Iowa. A copy of a newspaper advertisement by Limbaugh in the Fort Dodge Messenger on April 28, 1968, using the name O.K. Tire Stores, was received in evidence. An envelope of plaintiff addressed to Mr. Limbaugh on December 28, 1967 was also received.

■ The fact plaintiff apparently granted a franchise dealership to Limbaugh in Fort Dodge commencing in September 1967 is of no benefit to defendant. Admittedly his franchise agreement was terminated by plaintiff's letter of termination given to defendant on July 13, 1967.

The last sentence of paragraph 22 of defendant's franchise agreement provides: "It is further agreed that if this Franchise shall be terminated, however caused, that Licensor shall have the immediate right to confer a new license to any other person, firm or organization in the Licensed Territory to operate under the provisions of said 'Auto Float Process'." Defendant's franchise had been terminated before Limbaugh was permitted to start operating in Fort Dodge. In doing so plaintiff had not breached any obligation to defendant. No waiver or estoppel resulted by plaintiff's dealing with Limbaugh in the Fort Dodge area starting in September 1967. Defendant's affirmative defense of waiver or estoppel is unsupported by any evidence.

■ III. Courts of equity will grant injunctions whenever it clearly appears that in no other proceeding can public or private interest be fully protected. Abbott v. Iowa City, 224 Iowa 698, 706, 277 N.W. 437, 440, and citations; Sioux City Night Patrol v. Mathwig, 224 Iowa 748, 752, 753, 277 N.W. 457, 460. See also 43 C.J.S. Injunctions §§ 92 and 93.

In Orkin Exterminating Co., Inc., v. Burnett, 259 Iowa 1218, 1227, 1228, 146 N. W.2d 320, 326, 327, we say: "Although it has been held that an injunction will not issue when the benefit to plaintiff is slight and the damage to defendant will be great, nevertheless it is clear that where there is a violation of a plain right of the complainant and his injury is regarded as irreparable, he is ordinarily entitled to an injunction even though the injury is relatively small as compared with the injury which the defendant will suffer as a result of the issuance of the writ."

■ Here defendant was using plaintiff's valuable trade name for his own bene-

fit in clear violation of plaintiff's rights. Irreparable injury was being caused plaintiff and would continue. Plaintiff should be granted the injunction sought in its petition.

■ IV. The rule is well recognized the granting of a decree of specific performance rests in the sound discretion of the court and is not an absolute right. In a proper case, however, it is not to be denied unless some good reason is shown for so doing. Mitchell v. Mutch, 180 Iowa 1281, 1290, 164 N.W. 212, 215; Kurtz v. Gramanz, 198 Iowa 222, 232, 198 N.W. 325, 329; First Tr. JSL Bk. v. Resh, 226 Iowa 780, 783–785, 285 N.W. 192, 194, 195; Orr v. Graybill, 237 Iowa 628, 644, 23 N.W.2d 414, 422, 423, and citations. See also 49 Am.Jur., Specific Performance, section 9, page 17; Anno. 65 A.L.R. 7, 26–31.

■ Here paragraph 9 of the sales agreement gave plaintiff "the absolute right and option to purchase from Purchaser (defendant) each and every James Auto Float Truing Machine or Machines and each and every O.K. sign or signs now in or hereafter coming into the possession of Purchaser, at such time or times hereafter as O.K. may elect, * * *." Plaintiff exercised its option to purchase the truing machine in defendant's possession and tendered payment of $259, the amount due under the formula set out in the contract.

Defendant makes no attack on the fairness or validity of the contract. Plaintiff was clearly entitled to repurchase the truing machine which it elected to do. There is no evidence of other machines having been purchased or the value thereof. Defendant makes no claim a decree of specific performance as prayed would impose an undue hardship on him. Plaintiff should be granted a decree of specific performance as prayed in its petition.

All costs here and in the trial court should be taxed against defendant. For a

judgment and decree in accordance with this opinion, the case is—

Reversed and remanded.

All Justices concur.